OF

# PENNSYLVANIA.

NORTHERN DISTRICT—JULY TERM 1850.

SUNBURY.

15    9
35 SC 435

## Deddrick *versus* Wood.

A creek being declared by act of Assembly to be a public stream or highway for the passage of boats and rafts, and for the same purposes and under the same provisions as are contained in a former act, which prohibited any obstruction or impediment to the navigation of the stream: *Held*, that the provision was not to be limited to navigation by *boats and rafts only*; and, that the term *raft*, used in the act, is applicable to a number of logs, not fastened together, but floated in the stream contiguous to each other.

ERROR to the Common Pleas of *Potter county*.

This was an action on the case, brought by Deddrick & Purdy *v.* Wood and others: the summons was served upon Wood alone.

The plaintiffs declared for damages sustained by them, as the owners of a large quantity, viz. 2000 saw-logs, occasioned by the defendants having obstructed the navigation of the Oswayo Creek, in Potter county, by erecting and maintaining a dam and boom across the same.

Plaintiffs proved ownership of the logs, which, in the fall of 1846, they threw into the Oswayo Creek, for the purpose of floating them down to their mills, a few miles below. They were not rafted, or fastened together, but were put in, and kept together in a body, and run in that way when the freshet came.

[*Deddrick v.* Wood.]

The defendant and others had mills below, and got in logs some distance below plaintiffs' logs. To preserve their logs, they rolled them into the stream, in the right-hand channel, opposite an island in the Oswayo Creek. At the head of that island, a dam from the main shore to the island had been erected, and at the foot of it a boom thrown across, by which a pool was made, occupying the entire channel for the length of the island, on the right-hand side. This channel had always been the navigable one, until the dam and boom were erected, some four or five years before; since which it has been entirely impassable. At the time complained of, the pool created by the dam and boom was occupied by the defendants as a depository for their logs. The only channel left for navigation was the one on the left of the island, which, from *its* being more crooked, shallow, and obstructed by drift than the other, was insufficient to float through plaintiffs' logs, which were there stopped, frozen up, and carried off by the ice-flood the next spring.

Act of 4th March, 1807, 4 *Smith's Laws* 370, sec. 2, declares Conondau, now called Potato Creek, and the Allegheny River, south of the State line, highways, in the same terms. Sec. 5 subjects all persons, owning or possessing land on either of the said creeks or river, to all the restrictions and provisions of the act of 23d March, 1803. 4 *Smith* 20–21. Vide said act, *Dunlop,* 1st edition, 169.

After the evidence closed, the defendant's counsel asked the court to charge the jury on the following points:—

1. That the defendant is not liable, under the act of Assembly, for obstructing the passage of loose logs, not rafted, down the stream; and, as the evidence does not prove that the plaintiffs were hindered, obstructed, or sustained any damage in the passage of rafts or boats, they cannot recover in this suit.

2. That there is no evidence that the defendant in this suit erected or repaired the dam and boom or obstruction complained of, and that, without his erecting or repairing, he is not liable for any injury that may have been done—that simply occupying cannot be construed into either an erection or repairing—that the evidence proves that the obstructions complained of, were erected four or five years before defendant occupied or used the pond for storing logs; and there is no evidence that he put the least obstruction in the creek or highway complained of.

WILLISTON, J., charged the jury:—This suit is brought by the plaintiffs to recover against the defendant damages, as is alleged, in consequence of the defendant's erecting or maintaining a dam across a part of the Oswayo Creek, in this county, where the plaintiffs, in floating their logs down the Oswayo Creek, were obstructed, delayed and hindered, and sustained damages. By an act of the legislature, passed 4th March, A. D. 1807, a certain part of the Oswayo Creek, in this State, is declared " a public stream or high-

[Deddrick *v.* Wood.]

way, for the passage of boats and rafts." The obstruction complained against is in that part of the stream so declared a public stream or highway.

The counsel for defendant has requested the court to charge you on two points, which he insists are conclusive against the plaintiff's right to recover. The court decline charging you as requested by defendants upon the second point.

Upon the first point proposed, the court say that the act declaring the Oswayo Creek a public stream or highway is an act taking or appropriating private property to public use, for a specified purpose. A fair construction should be given to the act, according to its intent and meaning as expressed. And, although the term *raft*, in some parts of the United States, may mean a large quantity of trees, logs or flood, lodged in the bed of a stream, we are to understand the term as it is used in this State, and as we must suppose the legislature intended to use it. We believe that logs thrown loosely into a stream, and thus floated, are not called a raft—that the act declaring this a public stream or highway for the passage of boats and rafts, does not constitute it a highway for the floating of loose logs—that such use of the stream does not come within the protection of the act; and that, if the defendant did maintain the dam and boom in the creek as alleged, by which the plaintiffs were delayed, hindered and obstructed in running their logs, and thereby sustained damage, yet they are *not* entitled to recover in this cause, and your verdict should be for the defendant.

To which charge the counsel for plaintiffs excepted, and prayed the court to reduce their charge to writing and file the same of record, which is done this 9th January, 1850.

It was assigned for error:

The court erred in their answer to defendant's first point, and in their construction of the act of 4th March, 1807.

The case was argued by *Johnson*, for plaintiff in error, *Williston*, for defendant.

The opinion of the court was delivered, July 12, 1850, by

BELL, J.—The question here agitated is to be solved by the proper construction of the act of March 4, 1807. (4 *Smith's Laws* 369, 370.) It is entitled, "An act declaring part of Brush Creek, in the county of Bedford, and parts of Allegheny River, and Oswayo and Conondau Creeks, in the counties of Potter and McKean, and Bald Eagle Creek, in Centre county, public streams or highways." Its first section ordains that Brush Creek be, and the same is hereby declared a public stream or highway, for the passage of boats and rafts, and that it shall be lawful for persons *desirous of*

*using the navigation of said creek*, to remove all obstructions therein. The second section declared Oswayo Creek a public stream or highway, for the same purposes and under the same provisions as are contained in the first section; and the third, using similar terms, confers on Conondau Creek and Allegheny River, south of the State line, the same character of public highway. The fifth section subjects all persons owning or possessing land on either of these streams, to all the provisions and restrictions of the act of 23d March, 1803. And that act, while it authorizes owners of land adjoining any navigable stream of water, declared by law to be a public highway, with certain exceptions, to erect dams necessary for mills or other waterworks, expressly prohibits them to impede or obstruct the navigation of the streams. Looking to the general direction and scope of these provisions, I think it is obvious enough that the leading object of the legislature, when enacting the law of 1807, was to invest the several watercourses named in it, with the character of public and common thoroughfares, to be used by the people for the purposes of transportation, in such manner as their lawful occasions might require. The preamble declares the purpose to be the creation of highways, and the body of the act authorizes every one, desirous of using the navigation, to remove all obstructions; while the act of 1803, which by reference is incorporated with and made part of the subsequent statute, prohibits all impediments of the general navigation. But it is said, the universality of these provisions is restricted by the introduction of the terms, "for the passage of boats and rafts," which, read in connection with the other portions of the act, indicate a determination to confine the use of streams to their navigation by boats and rafts only. Considering, however, the inconveniences that might attend this construction, in a country where its navigable waters are used in a great variety of ways, and the very plainly expressed desire of the law makers to subject them to every species of *user* to which highways may be devoted, I should be inclined to say boat and rafts were pointed to rather as the instruments more commonly employed in traversing our inland streams than as the only allowable means. In the exposition of statutes, every part of them is to be considered; and where great inconvenience might result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain, in which case it must be obeyed. (U. S. *v.* Fisher, 2 *Cranch* 358.) In ascertaining the intention, too, nothing is to be rejected from which aid can be derived, and therefore the title of an act may claim a degree of notice, and is entitled to its share of consideration. The application of these rules to the act in question, would, I think, justify us in eschewing the narrow interpretation suggested by the defendant in error, and sanctioning the adoption of the more liberal meaning, which gives full effect to what, I cannot doubt, was the leading object of the framers of the law. What reason can be

[Deddrick *v.* Wood.]

given why the man who owns but a single log of saw-timber should be hindered in floating it to his saw-mill, while his more wealthy neighbor, the owner of a thousand logs, joined together, or a raft, is protected from all obstruction? Why should the hardy adventurer, who chooses to bestride his single stick, floating to market, be subjected to impediments and annoyances, which may not with impunity be placed in the path of the conductor of a boat or raft? No satisfactory answer can be returned to these questions, unless it be found in the language of the statute itself; and, I repeat, I am strongly disinclined to esteem this so peremptory as to exclude the more favorable interpretation.

But, according to the words relied on by the defendant in error all the influence he claims for them in determining the meaning of the act, we cannot agree with the court below in the signification it assigns to the term "rafts," as here used. The learned judge was of opinion that a number of logs, thrown loosely into a stream and suffered to float in a body, without being actually attached each to the other, cannot be denominated a raft, in the Pennsylvania meaning of the word. Why not? It is conceded that elsewhere the phrase is used to express a body of timber, held together by attraction, or the force of external pressure. Of this, the celebrated raft of the Red River is a familiar example. Walker, in his dictionary, says, it is "a frame or float made by laying pieces of timber across each other;" a definition which, though differing from that given by Webster, may, I think, be accepted as equally expressive of the usual acceptation of the term. But if a raft may be made by laying pieces of timber across each other, why may it not be constituted by so casting logs into a stream as to cause them to float contiguous to each other? We have seen the term is broad enough to cover such a disposition, and what warrant have we for saying that the legislature used it in a more restricted sense? None, but that found in the suggestion that, in this State, the word is commonly used to convey the idea of a body of floating lumber tied together, or in some way actually connected. But surely this is no sufficient reason for rejecting another well ascertained signification, which dispenses with actual ligaments, especially when its adoption will best subserve the leading object of the act. It seems to me we might, with the same propriety, refuse to recognise a canal-boat as included within the term "boats," because it is fashioned somewhat differently from the vessels usually designated by that word. The truth is, both are genuine, including every known modification and variety of each, and in construing a statute so beneficial as that before us, we are inclined to give to the disputed words the largest meaning of which they are at all susceptible. Thus regarded, the word "rafts," as used in our act, is comprehensive enough to cover the body of logs owned by the plain-

B

[Deddrick *v.* Wood.]

tiffs, the obstruction of which gives rise to this controversy. It follows, the court below was wrong in refusing to the owners the benefit of the law they invoked.

Judgment reversed, and a *venire de novo* awarded.