Allen *v.* Cook.

[MONTGOMERY GENERAL TERM, January 5, 1858.   *C. L. Allen, James* and *Rosekrans,* Justices.]

ALLEN *vs.* COOK.

The right of an individual filing the notice specified in the act of April 10, 1850 (*Laws of* 1850, *ch.* 260) relative to homestead exemptions, to have his homestead protected from sale under execution, so long as he continues to occupy it, with his family, is a personal right, which he cannot convey to another by a deed of the premises, so as to enable the latter to hold the property, as against a judgment creditor of his grantor.

Thus, where P., being the owner of a house and lot of the value of $1000, on the 27th of August, 1853, procured to be recorded in the county clerk's office a notice of his design to hold said house and lot as a homestead under the said act of April 10, 1850, and subsequently C. recovered a judgment against him, which was docketed December 3, 1856, and on the 1st of January, 1857, while the premises were occupied by P. with his family, he conveyed the same to A. by deed; *Held* that P. had no right to sell and convey the property, so as to exempt the same, in the hands of the grantee, from levy and sale upon an execution issued on the judgment.

CASE under section 372 of the code of procedure, submitting to the court a controversy between the parties, with respect to the liability of real estate of the plaintiff to the lien of a judgment of the defendant against one Almon D. Packard, the plaintiff's grantor.    On the 3d day of December, 1856, W. W. Cook, the defendant herein, recovered judgment against one Almon D. Packard, for $84.50, on a debt contracted subsequent to September, 1853, in the supreme court, which judgment was duly docketed, and the roll thereof filed in the clerk's office of Saratoga county, on said day, which judgment ever since then has remained wholly unsatisfied. . For some time previous to the recovery of said judgment, to

wit, in the year 1853, the said Packard had owned a dwelling house and lot, in the village of Saratoga Springs, in said county, and situated on Washington street, of the value of $1000. On the 27th day of August, 1853, Packard, pursuant to chapter 260 of the session laws of 1850, procured to be recorded in a book called the "Homestead Exemption Book," provided and kept by the clerk of said county for that purpose, a notice in due form of law, duly executed and acknowledged, stating that it was the design of said Packard to hold said house and lot as a homestead, under chapter 260 of the laws of 1850, and he did every thing required by law to be done to effect that purpose. The premises were occupied by said Packard, who was a householder having a family, up to and after January 1, 1857. Subsequent to the recovery of said judgment, to wit, on the 1st day of January, 1857, said Packard by deed conveyed said house and lot to Richard L. Allen, the plaintiff herein. On or about the 24th day of March, 1857, the defendant herein caused execution, in due form of law, and in the usual form of executions, to be issued on said judgment against Packard, directed to the sheriff of Saratoga county, requiring him to satisfy the said judgment out of the personal property of said Packard, and if sufficient thereof could not be found, then out of the real property in said county belonging to him on the day on which such judgment was docketed. And no personal property of said Packard being found, the sheriff, pursuant to law in such cases, proceeded to give the usual notice of sale of said house and lot, on said judgment, notwithstanding the recording of notice as aforesaid. It was stipulated that no other question should be made on this submission than this: Has said judgment ever become a lien on said property; and, under the circumstances, is the same liable to satisfy said judgment? And in case the court should be of the opinion that the lien of the judgment ever did attach to said property, and that the same is liable to the satisfaction of said judgment, then it was agreed that said sheriff proceed to sell the premises, and the defendant have

judgment against the plaintiff for $10 and his disbursements herein; and if the court should be of the opinion that said judgment was not a lien on said property, and that said property was not liable to satisfy said judgment, then that a rule or order be made, enjoining the defendant and sheriff from selling said property in satisfaction of the execution and judgment, and that the plaintiff herein have judgment for $10 costs, besides his disbursements. And that no other costs be allowed.

*J. R. Putnam,* for the plaintiff.

*L. B. Pike,* for the defendant.

*By the Court,* C. L. ALLEN, P. J. This is the first time, to my knowledge, that the question presented in this case has arisen in the courts of this state. We are now called upon to put a judicial construction upon a statute which, like many others, contains provisions in derogation of the common law, and which the defendant's counsel contends is, like them, to be strictly complied with in its several provisions.

It is unnecessary to refer to the condition of things which existed at the time when the rule was originated by Lord Coke, when he said, " The wisdom of the judges and sages of the law has always suppressed new and subtile inventions, in derogation of the common law." (*Coke, Inst.* 282 *b, L.* 9, § 485.) That rule, though somewhat relaxed, has been considered by some as well established, and as continuing to the present day. It has been frequently applied to cases arising under the various acts relating to the exemption from levy and sale under execution of the personal property of the debtor, and we are told that we need not hesitate to apply it to the present statute. By the laws of 1850, chapter 260, § 1, it is provided that " In addition to the property now exempt, by law, from sale under execution, there shall be exempt by law from sale on execution, for debts hereafter contracted, the lot and build-

ings thereon, occupied as a residence and owned by the debtor being a householder, and having a family, to the value of one thousand dollars. Such exemption shall continue *after the death* of such householder, for the benefit of the widow and family, some or one of them, continuing to occupy such homestead, until the youngest child becomes 21 years of age, and until the death of the widow. And no *release* or waiver of such exemption, shall be valid, unless the same shall be in writing, subscribed by such householder, and acknowledged in the same manner as conveyances of real estate are by law required to be acknowledged."

The 2d section declares that, "to entitle any property to such exemption, the conveyance of the same shall show that it is *designed to be held* as a homestead under this act, or if already purchased, or the conveyance does not show such design, a notice that the same is designed to be so held shall be executed and acknowledged by the person owning the said property, which shall contain a full description thereof, and shall be recorded in the office of the clerk of the county in which the said property is situated, in a book to be provided for that purpose, and known as the homestead exemption book." (2 *R. S. 4th ed.* 615, § 26.)

On the 27th of August, 1853, Almon D. Packard owned a house and lot in the village of Saratoga Springs, of the value of $1000, and on that day procured to be recorded in the "Homestead Exemption Book," kept by the clerk of that county, a notice executed and acknowledged as required by the act, stating that it was his design *to hold said house and lot* as a homestead under the act. He was at this time occupying the premises and was a householder then having a family, and so continued to reside with his family up to the first day of January, 1857, when he conveyed the premises to the plaintiff in this action.

The defendant recovered a judgment against Packard for $84.50, on a debt contracted subsequent to September, 1853, which was docketed in the clerk's office of Saratoga county on

Allen *v.* Cook.

the 3d of December, 1856; and on the 24th of March, 1857, he issued an execution on his judgment to the sheriff of that county, who, for want of sufficient property on which to levy, proceeded to give the usual notice for the sale of the house and lot thus conveyed to the plaintiff. The only question submitted for the consideration of the court is, "Has said judgment ever become a lien on said property, and under the circumstances, is the same liable to satisfy said judgment?"

It is to be observed that the act was not intended to discharge, and does not in fact discharge, absolutely, the *lien* of the judgment. It suspends its operation, however. The property is to be exempt from *sale on execution*, during the life of the debtor, provided he continues to be a householder, and during the life of his widow if he leaves one, and until his youngest child arrives at the age of 21 years, if they continue to occupy such homestead. Notice is to be given in the manner required by the act, so that not only persons with whom the individual may contract shall be apprised of the fact, but also that all may know that the property is held as a homestead exemption. No purchaser, therefore, can complain, or insist that he is to be protected as a bona fide grantee of such premises, unless the act authorizes, or was intended to authorize, such sale and purchase, and continues the exemption afterwards from sale under execution.

It has been already remarked that the defendant's counsel insists, that statutes in derogation of the common law are to be construed strictly. And yet the rule, in some of the courts, has been sometimes modified on the one hand, and on the other rigidly adhered to. Thus under the act exempting one cow owned by any person being a householder, it has been held that being intended for the benefit of poor families, the father or head of the family who had left the state, leaving his wife and children living together, is a householder within the meaning of the act. (*Woodward* v. *Murray*, 18 *John.* 400.) So where the family are in the act of removing from one house to another, their only cow has been exempted from execution. And again,

Allen *v.* Cook.

where a person being a householder and having a family, had wool, or articles manufactured from it not exceeding in quantity the fleeces from ten sheep, it was decided that they were exempt from execution *under the equity of the statute,* notwithstanding the person did not own any sheep. (*Hall* v. *Pinney,* 11 *Wend.* 44. *Brackett* v. *Watkins,* 21 *id.* 68.) In Massachusetts it was said, in one case, that although statutes made in derogation of the common law were to be construed *strictly,* yet they were also to be construed *sensibly,* and with a view to the object aimed at by the legislature; and it was held that the statute exempting one cow and one *swine* applied to the animal whether alive or dead. (*Gibson* v. *Jenney,* 15 *Mass. Rep.* 205, 6.)

On the other hand, the courts have said that statutes exempting a debtor's property from liability for his debts *are not remedial,* and are not entitled to a peculiarly liberal construction; and accordingly it was held that necessary food for a team exempt from execution under the act of 1842, is not also exempt, because not declared to be so in the act. (*Rue* v. *Alter, 5 Denio,* 119.) Necessary wearing apparel is not exempted in all cases, but only when it is owned by the householder or head of the family. The exemption, it is true, extends to apparel furnished by him for the use of others living with him, but does not embrace the clothing of one living with the family who provides them for himself. (*Bowne* v. *Witt,* 19 *Wend.* 475.) And cases might be multiplied in support of either proposition, viz: that these statutes exempting personal property from levy and sale under execution *are remedial,* and *are not remedial;* affirming the correctness of the motto, adopted by a distinguished writer on statute and constitutional law: " *Great is the mystery of judicial interpretation."*

It will be seen that the *intention* of the legislature has been often sought after, and supposed to have been arrived at by the courts, in construing many of these statutes; and it may perhaps be concluded, that at the present day there is really no good

reason why they should be regarded with undue and over strict severity. The present statute, like those we have been commenting upon, is a *humane one,* intended not only for the benefit of the debtor but for his wife and children; and it is said we may construe it liberally so as to carry into effect the intent of the legislature. It is undoubtedly a cardinal rule, in construing statutes of doubtful provisions, to ascertain, if possible, the intention of the legislature. One principle, however, we must certainly adhere to, and that is to be careful not to overstep the bounds of judicial construction, so as to assume functions which belong exclusively to the legislative body. "Arguments drawn from hardship, impolicy or inconvenience," says Justice Story, " are entitled to little weight. The only sound principle is to declare '*ita lex scripta est;*' and it would be going too far to make exceptions which the legislature has not made." " A court of law ought not to be influenced," says another distinguished jurist, " or governed by any notions of hardship; cases may require *legislative interference,* but judges cannot modify the law." The letter of the present statute is plain and entirely free from doubt and ambiguity. The *lien of a judgment* upon the exempt realty is *clearly preserved,* but the *remedy is suspended,* until the debtor ceases to be a householder. Suppose, the day or month after he has secured his right, his wife should die, and his children all having arrived at the age of 21 years, the debtor should remove from the premises; unquestionably they might be sold under an execution: and suppose that the debtor, the day before these casualties happened, should convey the property to a third person, would it be exempt from such sale? I apprehend not. Could he then convey while he was such householder, and go out of possession of the property, and resort to a boarding house with his family; or could he, if disposed, sell the property, put the money into his pocket and abscond, leaving his family entirely unprovided for, and the purchaser be protected against the sale under execution? I think not; for in that event the main object of the law would be frustrated, and the

Allen *v.* Cook.

intention of the legislature to provide a home for his *family*, as well as for the debtor himself, be entirely defeated, and he be enabled to practice a fraud upon his creditors and the community. Such, clearly, could not have been the intention of the act. It is entirely silent as to the right of the debtor to sell and convey his homestead; nor does it declare that the purchaser shall have any right, beyond those which he would acquire under an ordinary conveyance of real property subject to existing liens and incumbrances. It is argued that Packard could convey as good a title as he himself had in the house and lot in question. This may be true in the abstract. He had the legal title at common law, subject to such liens as might have been acquired against it; and he had the right to have his homestead protected from sale under execution, so long as he continued to hold and occupy and enjoy it with his family; but he could not convey away *this personal right.* (*Earl* v. *Camp,* 16 *Wend.* 562. *Mickles* v. *Tousley,* 1 *Cowen,* 114.) It is sufficient to remark that this exemption is not *made assignable* by the act. "*It is not so written in the law,*" and we cannot, as judges, so write it: that must be done by the legislature. That the legislature did not intend to confer the power to sell, is pretty conclusive from the fact that the act provides that the exemption shall continue after the death of the debtor, for the benefit of his widow and family, "some or one of them, continuing to occupy such homestead, until the youngest child becomes 21 years of age, *and until the death of the widow.*" But for this provision the right to sell under execution would have been complete on the death of the debtor.

It is conceded by the plaintiff's counsel, that the law is made solely for the benefit of the person who takes the steps necessary to avail himself of its provisions, and of his family. But the counsel insists that if he sells the property thus made exempt, the creditor is not injured, because having notice of such exemption, before the debt was contracted, he had no rights in the property while it was owned by the debtor, and

the latter by being authorized to make an exchange, or a sale and new purchase, might be benefited thereby; and to be deprived of this might prove a great hardship, and would in a great measure destroy the force and utility of the law. But we have already observed that we are not at liberty to regard hardship or inconvenience when construing the words of a statute plain and intelligible, nor to extend or add to its provisions. It is sufficient that the enacting power has not seen fit to incorporate the necessary language to authorize the court to sanction the construction asked for, and that it is only in doubtful cases, in statutes of this description, that an equitable or liberal interpretation may be allowed. The legislature shall be intended to mean what they have plainly expressed, and consequently no room is left for construction. (*Sedgwick on Stat. and Const. Law*, 379, *note*.) It has been well remarked, that " in cases where the intent of the legislature is ambiguous, and the effort to arrive at it is hopeless, and in these cases only, does the power of construing a statute strictly or liberally exist. Where the language is explicit the courts are bound to seek for it in the words of the act, and are not at liberty to suppose that they intended any thing different from what their language imports." (*Sedg. on Const. and Statute Law*, 380, *and note*, 382, 3.) Besides, to adopt the views of the plaintiff's counsel might lead to the perpetration of more mischief than all the benefits which could be derived in particular cases. The legislature, for some good reasons, probably, did not see fit to authorize the debtor to sell and convey, so as to exempt the property from sale after coming to the hands of the grantee; or if it intended to do so, it has not declared such intention in the law. If it is an omission, we cannot supply it. In the language of Mr. Justice Buller, in *Jones* v. *Smart*, (1 *T. R.* 44, 52,) " We are bound to take the act of" the legislature " as it has been made. A *casus omissus* can in no case be supplied, by a court of law, for that would be to make laws; nor can I conceive that it is our province to consider whether such a law that has been passed

be tyrannical [and he might have added *sufficiently wise and liberal* in its provisions] *or not."* (*And see Sedg. on Stat. and Const. Law,* 911, 12; *Priestman* v. *The United States,* 4 *Dall.* 30, *n.* 1, *and cases before cited.*)

The defendant is entitled to judgment, according to the stipulation in the case.