JAMES STOCKWELL, as RECEIVER, ETC., OF NATHANIEL ROWELL, APPELLANT, *v.* THE NATIONAL BANK OF MALONE AND NATHANIEL ROWELL, RESPONDENTS.

### SAME *v.* SAME.

*Deposit of pension in savings bank — exempt from execution under Code of Civil Procedure, section* 1393.

The plaintiff, having been appointed a receiver of the property of one Rowell in supplementary proceedings instituted upon a judgment recovered against him, brought this action to recover from the defendant bank the amount of a deposit held by it for the said Rowell. The deposit consisted of pension money received by Rowell and deposited with the bank, partly in cash and partly in a check or draft of the pension agent, under an agreement that interest should be allowed thereon.

*Held,* that the fund was exempt from execution under section 1393 of the Code of Civil Procedure. (BOCKES, J., doubting, and not concurring.)

APPEAL from judgments dismissing the complaint in the above-entitled actions, entered upon the trial of the actions by the court without a jury.

*W. P. Cantwell,* for the appellant.

*Hobbs & Kilburn,* for the respondents.

LEARNED, P. J. :

The plaintiff, a receiver of the property of one Rowell, appointed in proceedings supplementary taken by a creditor of Rowell, seeks in this action to recover money standing to the credit of Rowell in the savings department of the National Bank of Malone. The defense of the bank and of Rowell is that the money is pension money, and therefore is exempt under Code section 1393.

For military services in the late civil war Rowell was granted a pension by the United States. Having in his possession $100, part of such pension money, and also a check or draft of the pension agent for $1,000, being also a part of such pension, Rowell deposited the said money and the said check or draft to his credit in the said savings department; where the same stood to his credit at the time

of the appointment of the plaintiff as receiver as aforesaid. At that time there also stood to his credit the sum of nineteen dollars, credited to him for interest on said deposit of $1,100, making in all $1,119; all of the same being such pension money and interest. The bank allows him interest on his deposit. He did not have actual possession of the $1,000 mentioned in the draft, but deposited the draft itself as above stated.

The question is whether the money is exempt. The United States law (R. S., § 4747) does not apply. That protects pensions "in the course of transmission." The decisions under that law are therefore of no weight in this case. Such are *Cranz* v. *White* (27 Kan., 319); *Webb* v. *Holt* (57 Ia., 712); *Jardain* v. *Fairton Savings Fund Association* (44 N. J., 376); *Kellogg* v. *Waite* (12 Allen, 529); *Spelman* v. *Aldrich* (126 Mass., 113).

The section of the Code, omitting the parts which are not material, is: "A pension * * * granted by the United States * * * for military * * * services" is "exempt * * * from seizure for non-payment of taxes, or in any other legal proceeding." The other things exempted by the same section are things which usually are in the actual possession of the person entitled to them. And it is apparent that by this section a pension is exempted, not, as by the United States statute, only when "in course of transmission," but after it has been received by the pensioner. Then the question is whether this money, by its deposit in a savings bank on interest, had ceased to be a pension under this section.

In *Whiting* v. *Barrett* (7 Lans., 106), under a similar statute it was held that county bonds being exempt, might be transferred by the soldier to his wife; and that such transfer would not be in fraud of his creditors, as they had no claim to the bonds. This case shows that a transfer of the exempt property did not authorize the creditors to reach it.

The case of *Wygant* v. *Smith* (2 Lans., 185) was one where the property claimed to be exempt was the result of successive dealings and transfers. As the court say it was "in part the third and in part the sixth or seventh remove from the original exempt fund." That is not the present case.

The plaintiff urges that by the deposit of the money the identity of the pension was lost, and that Rowell became simply a creditor

of the bank. Now the pension reached Rowell in the form of a draft. It would be absurd to say that if Rowell should obtain the money on that draft he would change the form, so that the money would not be exempt. Then must he hold that money in his actual custody, or may he do, as prudent men do, deposit it in a bank and use it as he needs? It would be clearly unreasonable to hold that the quality of exemption was lost by what was only a careful mode of preserving the money. It is true that, accurately speaking, the bank becomes the debtor. Still, practically, the money is there for the depositor's use and is so regarded by him. And none the less so because the bank allows interest.

The section did not intend to prevent the pensioner from using his pension. It would be of no benefit to him unless he could use it. We are not called upon to say in this case to what extent purchases made with this exempt money would be themselves exempt. Though we should be disposed to hold that every thing bought in the ordinary way of using and enjoying such a pension would be exempt, as the pension itself is.

But in the present case, in all fair and reasonable meaning, this money in the savings bank is the pension, just as much as the draft was, and just as much as the avails of the draft would have been, if Rowell had received the avails in money.

An illustration of the view we have taken may be seen in *Tillotson* v. *Wolcott* (48 N. Y., 190), where it was held that a judgment recovered by a debtor against his creditor for unlawfully levying on and selling exempt property was itself exempt.

The object of the section is to secure the pensioner in the use and enjoyment of this gift of the government, and to prevent his creditors from taking it away. As far as possible the courts should protect him in such use and enjoyment. If, like a prudent man, the pensioner places his money in bank, where it will gain a little interest, it would be most unjust to make this act the ground of depriving him of that which the State intended that he should keep and enjoy. See, also, the case of *Wildrick v. De Vinney*, (18 N. Y. Weekly Dig., 355), which seems to be exactly in point.

Judgments affirmed in each of the two cases, with costs.

LANDON, J., concurred.

BOCKES, J.:

I am not free from doubt in these cases. There must be a time, I think, after the pensioner has received his pension money and put it to use, when the exemption declared by section 1393 of the Code of Civil Procedure will cease to operate for its protection. Pension money is protected until it comes to the hands of the pensioner under the United States statute (§ 4747). (*Cranz* v. *White*, 41 Am. Rep., 408, and cases cited in note on pages 411, 412, 413 ; also *Friend in Equity* v. *Garcelon*, 1 Eastern Reporter [77 Me.], 57.) These cases, or some of them, hold that the money will be deemed to be no longer exempt under that statute after the government draft is received by the pensioner, and being indorsed by him the avails are placed to his credit in a bank of his selection. Accordingly, the money in this case was not protected by the United States statute. It had, in law, come to the pensioner's hands; that is, was subject to his personal control, and in this case had been put by him to use.

The question then arises, under section 1394 of the Code, whether it shall continue exempt after being received by the pensioner, ever afterwards, however employed, so long as it, or its avails when converted into securities or property, can be traced ? This question is answered in the negative by the decision in *Wygant* v. *Smith* (2 Lans., 185). The question in the case cited arose under the law of 1864 (chap. 578), similar in import to the section of the Code under which the exemption is here claimed. Judge JOHNSON, speaking for the court, there says : " It has never yet been held that, where a debtor voluntarily sells or exchanges property which the law exempts from levy and sale by execution, and converts it into other property which the law does not exempt, the exemption attaches to the new property so purchased or taken in exchange. On the contrary, the principle and spirit of the decisions are all the other way." (See, also, opinion in *Allen* v. *Cook*, 26 Barb., 374, a case which arose under the homestead exemption law ; also *Youmans* v. *Boomhower*, 3 N. Y. S. Ct. R. [T. & C.], 21.) It seems to me that the decisions above referred to under the United States statute are not without application here. That law as effectually protects pension money as does section 1393 of the Code. That law declares that pension money shall be exempt, etc., and "*shall*

*inure wholly to the benefit of the pensioner.*" The words " whether the same remains with the pension office, or any officer or agent thereof, or in course of transmission to the pensioner entitled thereto," do not limit or operate in restriction of the general exception declared by the law. Those words were very manifestly not intended to be construed as restrictions, but were employed rather to remove any possible doubt as to the enlarged and comprehensive signification to be given 'to the law; and to give additional emphasis to it in this regard there was superadded as follows : But such pension money " *shall inure wholly to the benefit of such pensioner.*" Thus it will be seen that the exemption declared by the Code of Civil Procedure is no more comprehensive or extensive in its meaning than is the United States statute. But, under this statute, the decisions are to the effect that the exemption continues only until the money reaches the hands of the pensioner and is by him put to use. As suggested in *Crosby* v. *Stephan* (32 Hun, 480), through how many mutations is the exemption to extend? If the party buys securities and sells them and buys others, are they exempt? If not, when does the exemption cease? It must cease at some time in the course of the mutations. Suppose the money had been used by the pensioner in the purchase of a farm, or had been employed in merchandise, would the property into which it had been converted be protected under our Code? This cannot be maintained. (*Allen* v. *Cook, supra.*) It would be the same if put in bond and mortgage, note or other security, or in bank *on interest.* The Code exempts "*pension ;*" also " *sword, horse, medal, uniform, arms* and *equipment ;*" all by the use of the same words and in the same paragraph. In case the sword, or horse, or medal, etc., should be converted into money or other property, would the exemption attach to such money and property? Now, " pension " is protected by the same words of exemption. Then, would not its conversion to general use operate to discharge the exemption, the same as would the sale or exchange of the exempted sword? I do not think that the case of *Whiting* v. *Barrett* (7 Lans., 106) at all conclusive of the question in defendant's favor. There was a transfer, while yet the creditor had no claim upon the property either legal or equitable.. In this respect the case was an authority for the decision (in part) in *Youmans* v. *Boomhower (supra).* But

I do not propose here to protract the examination of the subject, inasmuch as my brothers LEARNED and LANDON are for affirmance. Their concurrence makes the judgment; and I will now content myself with the expression of serious doubt as to the correctness of such conclusion.

Judgment affirmed, with costs.