R. A. SLACK v. THE STATE.

No. 804.     Decided March 1, 1911.

Rehearing Denied May 3, 1911.

1.—Selling Intoxicating Liquors—Occupation—Local Option—Indictment— Negative Allegations.

Where, upon trial of unlawfully pursuing the occupation of selling intoxicating liquors in local option territory, the negative allegation in the indictment was that the sale was in violation of said law which was then in full force, etc., after making all necessary allegations showing that local option was in force, etc., the same was sufficient upon motion to quash. Following Mizell v. State, 59 Texas Crim. Rep., 226, and other cases. Davidson, Presiding Judge, dissenting.

2.—Same—Statutes Construed—Common Sense Indictment.

Article 542, Code Criminal Procedure, providing that in an indictment for selling intoxicating liquor in violation of any law in this State, it shall be sufficient to charge that the defendant sold intoxicating liquors contrary to the law, naming the person to whom sold, without stating the quantity sold, and that under such indictment any act of selling in violation of the law may be prosecuted, is still in force and not repealed.

3.—Same—Indictment—Exceptions which must be Negatived.

It is immaterial in what part of the statute an exception appears; if it is a part of the definition of an offense or descriptive of an offense the exception must be negatived in the indictment; but if it is not a part of the offense nor descriptive of the offense, it is likewise immaterial what part of the

statute the exception appears, and it need not be negatived in the indictment. Distinguishing Keith v. State, 58 Texas Crim. Rep., 418, and other cases.

**4.—Same—Words and Phrases—Not Descriptive.**

The contention, that the words "except as permitted by law" appearing in the body of the Act renders them descriptive of the offense, is not supported by sound logic or reason or the decisions of this State. Davidson, Presiding Judge, dissenting.

**5.—Same—Statutes Construed—Felony Act—Local Option Territory.**

The law making it a felony to pursue the occupation of selling intoxicating liquors in local option territory, applies and is in force in the entire State of Texas where prohibition has been adopted either before or after the law took effect. Distinguishing Dawson v. State, 25 Texas Crim. App., 670, and other cases. Following Fitch v. State, 58 Texas Crim. Rep., 366. Davidson, Presiding Judge, dissenting.

**6.—Same—Legislative Intent.**

A legislative Act is to be determined according to the intention of the Legislature apparent upon its face and is not to be defeated by technical rules.

**7.—Same—Legislative Construction.**

It is competent for the Legislature to enact rules for the construction of statutes, present or future, and when it has done so each succeeding Legislature, unless the contrary intention is plainly manifested, is supposed to employ words and frame enactments with reference to such rules.

**8.—Same—Negative Averment—Indictment.**

A negative averment need not be so minute or so nearly in the statutory words as must an affirmative one, but any negation in general terms covering the entire substance of the matter will suffice. Following Duke v. State, 42 Texas, 455.

Appeal from the District Court of Comanche. Tried below before the Hon. J. H. Arnold.

Appeal from a conviction of unlawfully pursuing the occupation and business of selling intoxicating liquors in local option territory; penalty, two years imprisonment in the penitentiary.

The following statement from appellant's brief is substantially correct.

The evidence disclosed that on June 5, 1909, the local option election was held in Comanche County, Texas, which resulted in the adoption of the local option law. The order of the Commissioner's Court, declaring the result of this election, was published in the "Pioneer Exponent" on the 17th and 24th days of June, and the 1st and 8th days of July, 1909. The State showed that the defendant had not paid an occupation tax for selling liquors in Comanche County. E. Smith testified that during the months of November and December, 1909, he delivered to the defendant for the Wells-Fargo Express Co., about one express package (marked intoxicating liquors) a week during said time. Ben Anthony testified, in substance, that he delivered express in the town of Comanche for the U. S. Express Co., and that on Jan. 11, 1910, Feb. 28, 1910, March 21, 1910, and April 28, 1910, he caused to be delivered by Hugh Cameron, express packages, which were marked intoxicating liquors.

Newt Hall testified that in February, 1910, he made two purchases of intoxicating liquor from defendant. Joe Sidwell testified that he made two purchases of intoxicating liquor from the defendant about the first of the year 1910. John Killien testified that soon after Christmas, 1909, he made three purchases of intoxicating liquor from the defendant. Scott Smith testified that during the first part of 1910 he made a purchase of intoxicating liquor from the defendant.

*Calloway & Calloway,* and *V. L. Reed,* and *J. R. Stubblefield,* and *McGregor & Gaines,* for appellant.—On question of insufficiency of indictment: Burch v. Republic, 1 Texas, 608; Huntsman v. State, 12 Texas Crim. App., 619; Cook v. U. S., 7 Wall., 168; Rice v. State, 37 Texas Crim. Rep., 36; Vavasour v. Ormond, 9 Dowling & Ryland, 597; State v. O'Donnell, 10 R. I., 472; Commonwealth v. Hart; 11 Cush., 130; Acts 31st Legislature, p. 284; Art. 403 Code Crim. Procedure, and cases cited in dissenting opinion.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—The appellant in this case was indicted by the grand jury of Comanche County, charged with pursuing the occupation of selling intoxicating liquors in violation of law. He was tried, convicted, and sentenced to two years in the penitentiary.

The defendant filed a motion in the trial court to quash the indictment, which was by the court overruled, and to this action of the court defendant objects as his first ground in his motion for a new trial.

In this case a very able brief has been filed, contending that in indictments of this character, and for all violations of the local option law, the averments must negative all exceptions under which intoxicating liquors can be sold, and that it is not sufficient to conclude, after making all necessary allegations showing that local option is in force in proper form, that the occupation was pursued and sales made, "in violation of said law, which law was then and there in full force."

The indictment in this case is in exact terms of the case of Mizell v. the State, 59 Texas Crim. Rep., 226; 128 S. W. Rep., 125, in which the negative allegation was "in violation of said law, which was then in full force," etc. The court in that case says: "We hold that this indictment is valid, and commend it to the prosecuting officers as a precedent in drafting indictments for pursuing the occupation and business of a whisky dealer in local option territory." This opinion was concurred in by the entire court, except that Judge Davidson says: "I concur in holding the indictment should charge that it is necessary to aver in the indictment (1) that the party must be engaged in the business of selling liquor in local option territory in violation of law; (2) that there must be at least two sales in addi-

tion to carrying on such business; (3) that the names of the purchasers and dates of sale must be alleged in the indictment. But I dissent from the holding that such acts can be punished in local option territory, where such law was in operation at the time that the law went into effect."

The holding in this case that the indictment herein is valid, is approved in the case of Murphy v. The State, 59 Texas Crim. Rep., 479; 129 S. W. Rep., 138, and referred to as a form to be followed. Again, in Sutphen v. State, 59 Texas Crim. Rep., 500; 129 S. W. Rep., 144, this form is approved. In the case of Payne v. State, 60 Texas Crim. Rep., 322; 129 S. W. Rep., 1197, while the indictment is quashed on a different ground, yet, Presiding Judge Davidson, in rendering the opinion, cites with approval the holding in the case of Mizell v. State, 59 Texas Crim. Rep., 226; 128 S. W. Rep., 125, on the question of the form of the indictment. By reference to our 'Penal Code, we find that the Legislature, in 1881, passed a law in which it was provided that, "In an indictment for selling intoxicating liquor in violation of any law in this State, it shall be sufficient to charge that the defendant sold intoxicating liquors contrary to law, naming the person to whom sold, without stating the quantity sold; and under such indictment, any act of selling in violation of the law may be prosecuted." In conformity to this law, Judge Winkler, in 1882, in the case of White v. State, 11 Texas Crim. App., 476, holds that an indictment drawn in accordance with its provisions is valid. We are aware of the opinion by Judge Willson, in the case of Mansfield v. State, 17 Texas Crim. App., 468; in which Judge Willson states that this section of the Act of 1881, had been repealed, and that it was no longer necessary to allege the name of the purchaser. But from a careful inspection of the Acts of the Legislature from 1881 down to and including the year 1885, when this latter opinion was rendered, it can be seen that the learned Judge was mistaken in saying this clause of the Act had been repealed by the Legislature. But even had that statement been true, the Legislature, in 1895, reenacted the provision and brought it forward in the Code of Criminal Procedure, as Article· 452, and it is now the law of this State, and has been since 1895, for more than fifteen years. In the case of Williams v. The State, 37 Texas Crim. Rep., 238, Judge Hurt, who is recognized as one of the ablest lawyers who ever sat on this bench, says: "Must the indictment negative the fact that the liquor was sold for sacramental purposes, or for medicinal purposes, under the prescription of a physician? The Act defining the offense is contained in Article 402, Penal Code, 1895, and Article 3384 Rev. Stat., 1895. These articles do not refer to the sale of wine for sacramental purposes, nor alcoholic stimulants as medicines, in case of actual sickness," etc. These articles, exceptions, are not found in the articles defining the offense, but in separate and distinct articles, to wit: Article 403, Penal Code, 1895. Under well

settled rules, all the elements entering into the offense must be alleged in the indictment. The Legislature can not relieve the State of the necessity of so framing the indictment as to charge the accused with all the acts and intents which constitute the offense. The question, therefore, arises whether this indictment charges the accused with an offense. It evidently does. It is contended by counsel, however, that though the exceptions may not occur in the same clause or article, yet, if they are interwoven or engrafted upon the Act which defines the offense, they must be negatived. We do not question the correctness of this proposition in a proper case. An Act may be so framed when taken all together, as to require exceptions to be negatived, though they may not be found in the enacting clause. This, however, is rare. The statute in reference to this offense is perfectly clear."

The statute in this case makes it an offense to pursue the occupation or business of selling intoxicating liquors, except as permitted by law, in any territory in this State, where the sale of intoxicating liquors has been prohibited by law. The indictment alleges that the sale was not permitted, but specifically alleges it was in violation of said law, the sale of intoxicating liquors being then and there prohibited. If it is contended that it meant that a sale must be illegal under the old act, then Judge Hurt says that the exceptions need not be negatived in the indictment, further than is done in this case.

In the case of Malone v. The State, 39 S. W., Rep., 1118, Judge Hurt again affirms the rule laid down in the case of Williams v. The State, supra. In the case of Loveless v. State, 49 S. W., Rep., 601, it is held: "That it is not necessary that the order for the election embrace the exceptions, and because the exceptions for medicinal and sacramental purposes are not contained in the order for the election or in the order declaring the result, and the order absolutely prohibits the sale of intoxicating liquors in the local option precinct, does not inhibit the sales for such purposes. It has reference to such sales as can be prohibited under the local option law, and no more (citing Williams v. The State, 37 Texas Crim. Rep., 238)."

In the Encyclopedia of Law, Vol. 22, pages 285 and 286, a recognized standard authority, the following rule has been laid down: "Power of Legislatures. It is within the power of the Legislatures under such constitutional provision, to prescribe the form of the indictment or information, and such form may omit averments regarded as necessary at common law; but the Legislature, while it may simplify the form of an indictment or information, can not dispense with the necessity of placing therein a distinct presentation of the offense containing allegations of all the essential elements. The constitutional right of the accused to demand the nature and cause of the accusation, is not infringed by statutes providing that accessaries may be indicted as principals; dispensing with an alle-

gation of time when it is not of the essence of the offense; or obviating the necessity of laying a venue; *of negativing a statutory exception,* or of making a particular description of certain kinds of property. And it has been held that the Legislature may provide that it shall be unnecessary to° specify the person whom it was intended to defraud in averring an intent to defraud. Where a particular offense, such as homicide, is divided into degrees which are defined by statute, the indictment may follow the general form without specifying the elements which fix the particular degree, and still fulfill the requirement of informing defendant of the nature and cause of the accusation. But the Legislature can not provide that if, on the trial of an indictment for a specific offense, it is found that the offense has not been committed, but that another has, a conviction may be had for the offense proved, or that a person indicted for an offense consisting of one state of facts, may be tried and convicted under that indictment of an offense consisting of a different state of facts. In some cases the courts have intimated that an indictment in the statutory form can not be held to infringe the constitutional privilege of the accused to be informed of the nature of the charge, when the accused is entitled to secure a specification of the particular acts relied on by the government, through a bill of particulars," citing many authorities.

Legislation by statute has done away with the necessity of negativing the exception in this character of case, even if it was necessary at common law, by Article 452 of the Code of Criminal Procedure. In the case of State v. Higgins, 13 R. I., 330, it is held that the Legislature has power to provide: "It is entirely reasonable, we think, that a person who is prosecuted for an act which is generally criminal, should, if licensed to commit it, be required to show his license in defense whenever there is evidence to establish his guilt if he has no license." Our Legislature has not gone that far, but it has provided that it need not be negatived in the indictment, and we think it has the power to do so. The form of indictment in this case, as regards negative averments, has been in use in this State for many years with the sanction and approval of this court. In May, 1910, this court, in speaking of a form of indictment exactly similar in verbiage, says: "We hold that this indictment is valid, and commend it to the prosecuting officers as a precedent in drafting indictments for pursuing the business and occupation of a whisky dealer in local option territory," and now to overrule this decision, in the face of the statute on this question, would work incalculable mischief. The prosecuting officers of this State thought, and had a right to think, that this court had given the question mature consideration before sending it forth with its commendation and approval. They have followed the advice given, in the main, and about all the cases coming to this court are written in this form. The State has been put to the expense of trials; a number of men are serving terms in

the penitentiary under it, affirmed by this court; prosecutions are pending in many counties in Texas, and for the court to now change its views in so short a time would cause the citizenship of the State to lose confidence in its opinions, and would lead the legal profession to expressions of ridicule. In passing on the construction of statutes, Mr. Justice Brewer (Holy Trinity Church v. United States, 143 U. S., 457), says: "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression or an absurd consequence."

If this is true in general of statutes, how much more consideration should we give to the statute law of our own State that has stood for fifteen years, and the opinions of our own court, rather than by overruling the decisions and overriding the Code of Criminal Procedure, adopt another line of thought, which would throw into confusion our District Courts and cause a needless expense to the State, and perhaps in some instances, permit those charged with crime to escape without trial, by reason of limitation preventing reindictment. We are aware that at common law, many decisions can be found holding that exceptions must be negatived, but it is in those States where the statutes have not changed the rule.

We are aware that the Act of the Legislature, known as the common sense indictment bill, is thought by some to have been held unconstitutional. Some of its provisions were, while other provisions contained therein were upheld and approved by the court. In the case of Dwyer v. State, 12 Texas Crim. App., 535, when the court was composed of Judges Hurt, Willson and White, the court held:

"The principal question presented in this case is the sufficieny of the indictment. It is the exact form prescribed for the crime of murder, by the Act of March 26, 1881. (Gen. Laws 17th Leg. Chap. 57, p. 60, form No. 2.) It is urged that this form is not an "indictment" within the meaning of section 10 of the Bill of Rights. While we hold that several of the forms prescribed by that Act are insufficient and invalid because they do not set forth the acts, facts and omissions which constitute the offenses they are intended to charge, we are of the opinion that the form prescribed for murder is not subject to this objection. It is very brief, and yet we think it contains every essential fact and element constituting the crime of murder. What is murder as defined by our Code? In substance it is the killing of a human being, with malice aforethought. It is an offense composed of but few elements; in fact, but two, 1, a killing, and 2, that the act of killing was committed with malice aforethought. This indictment alleges the act of killing. It alleges that the killing was with malice aforethought on the part of the slayer. These are not allegations of legal results or conclusions, but of acts and facts which, taken together, complete the offense of murder. By the allegation of these acts and facts, the defendant is fully informed of the nature and cause of the accusation against him. He is in-

formed that about a certain time, in a certain county, in the State of Texas, he killed a certain person by striking him with a scantling, and that he committed this act with malice aforethought. He knows from this information the facts that he is called upon to meet, and these facts, when proved, constitute murder. We therefore hold this indictment to be good."

This holding has been recently approved by this court in the case of Ringo v. State, 54 Texas Crim. Rep., 561, and in all cases where the question has been raised since the Legislature adopted the form. By some it has been supposed that the decision in the case of Huntsman v. State, 12 Texas Crim. App., 619, held this Act invalid, but a careful reading of this case will show that the question now under discussion, was not involved in that case, but the question, when a man is indicted for theft, could he be convicted of embezzlement, and the court held that he could not. Both opinions of Dwyer v. State, and Huntsman v. State, supra, were delivered at the Austin term of court, 1882, by the same judges, and if it had been intended to hold the Act of March 26, 1881, invalid, as a whole, certainly they would not have held the indictment for murder valid in the Dwyer case, supra. It certainly is not sufficient at common law, and it is only held valid by virtue of the Act of the Legislature. All homicides are not unlawful. If a person kills another in defense of himself, or in defense of his property, he is guilty of no offense. (Art. 674, Penal Code.) There are many other instances in which homicide is justifiable, but in bringing an indictment charging a person with homicide, it is not necessary to negative these exceptions. It is true these exceptions are in different articles of the statute, and so in the statute for violating the local option law the exceptions are in different articles.

We think the Legislature had the authority to pass article 452, and in following it the defendant is fully apprised of the nature and cause of the offense. The court did not err in overruling the motion to quash the indictment.

2. The second proposition relied on in this case is that prohibition having been adopted in Comanche County prior to the enactment by the Legislature of the law making it a penitentiary offense to pursue the occupation of selling intoxicating liquors in prohibition territory, does not apply in that county.

Our able and learned presiding judge, Judge Davidson, has written an opinion overruling the case of Fitch v. State, 58 Texas Crim. Rep., 366, 127 S. W. Rep., 1040, and the cases since following that decision. The case of Lewis v. State, 58 Texas Crim. Rep., 351, 127 S. W. Rep., 808, and the cases there cited are relied on as the basis for his opinion in overruling the former decision of this court. We want to do him the credit of not insisting that the Legislature had no power to enact the law. He admits that the law is constitutional, and his only insistence is that the law did not take effect in those

counties where local option was in full force at the time of its enact-
ment by the Legislature, but it became effective only in such counties
as may thereafter adopt the law prohibiting the sale of intoxicating
liquors.

This brings down as the sole question of disagreement between us
the one question: is the law making it a felony to pursue the occu-
pation of selling intoxicating liquors in force in all territory in Texas
where prohibition has been adopted, or is it in force only in such
counties where prohibition has been adopted since July 11, 1909,
the day the law became effective?

The law itself reads as follows: "Section 1. If any person shall
engage in or pursue the occupation or business of selling intoxicating
liquors except as permitted by law, in any county, justice precinct,
city, town or subdivision of a county in which the sale of intoxicating
liquor has been or shall hereafter be prohibited under the laws of this
State, he or she shall be punished by confinement in the penitentiary
not less than two, nor more than five years.

"Sec. 2. In prosecutions under this Act, where it is proven that
there is posted up at the place where such intoxicating liquor is
being sold, United States internal revenue liquor or malt license to
anyone, it shall be prima facie proof that the person to whom such
license is issued, is engaged in and is pursuing the business and
occupation of selling intoxicating liquors within the meaning of this
Act.

"Sec. 3. In order to constitute the engaging in or pursuing the
occupation or business of selling intoxicating liquors within the mean-
ing of this Act, it shall be necessary for the State to prove in all
prosecutions hereunder, that the defendant made at least two sales
of intoxicating liquor within three years next preceding the filing of
the indictment.

"Sec. 4. The inadequacy of the laws of this State to prohibit the
unlawful sale of intoxicating liquors in the counties, justice precincts,
cities, towns and other subdivisions of this State where the sale of
intoxicating liquor has been prohibited by law, creates an emergency
and an imperative public necessity, demanding the suspension of the
constitutional rule requiring bills to be read on three several days,
and the rule is so suspended, and that this Act take effect and be
in force from and after its passage, and it is so enacted."

By section 4 it is seen that the law itself declares that "the in-
adequacy of the laws of this State to prohibit the unlawful sale of
intoxicating liquors in the counties, justice precincts, cities, towns and
other subdivisions of this State where the sale of intoxicating liquor
*has been prohibited* by law, creates an emergency and an imperative
public necessity, that the law be put in force at once. And in section
1 of the Act the words "has been or hereafter shall be prohibited,"
evidencing it as the clear and undisputable intention of the Legisla-
ture that the law should be applicable as well to territory where pro-

hibition had theretofore been adopted as to territory which should thereafter adopt it. But should it be contended that these words do not clearly show the intention of the Legislature to be that the law should become effective in all territory where prohibition is in force, then by reference to the journals of the Legislature (which has always been approved when the intention of a law is in doubt) we find on page 124, Journal of the Senate (Acts of the called session of the Thirty-first Legislature), that when this bill was under consideration, that an amendment was offered in terms as follows: "Amend the bill by striking out of line 16, page 1, the words 'has been or' and adding at the end of line 19, page 1, the following: 'Provided, the punishment in counties, justice precincts, cities, towns or subdivisions of a county, where the sale of liquor is now prohibited by law, shall be as now provided by law, and this Act shall only apply to such counties, justice precincts, cities, towns or subdivisions hereafter prohibiting the sale of intoxicating liquors.'" The amendment was rejected, manifesting beyond all shadow of doubt that if the intention of the Legislature is to govern, that the law should become effective in all territory where prohibition had theretofore been adopted, as well as in territory thereafter adopting it.

The United States Supreme Court, Justice Storey rendering the opinion, lays down the rule: "This is a legislative Act, and is to be interpreted according to the intention of the Legislature apparent on its face. Every technical rule as to the construction or force of particular terms must yield to the clear expression of the paramount will of the Legislature." (2 Pet., 662.)

A legislative Act is to be determined according to the intention of the Legislature apparent upon its face, and is not to be defeated by technical rules (U. S. v. Freeman, 3 How., 556). This is the unbroken rule of the United States Supreme Court, and in support of it, decisions from many States might be referred to. The decisions in these cases have been followed and cited in Wilson v. Biscoe, 11 Ark., 44; Linsley v. Brown, 13 Conn., 192; State ex rel. Bash v. Jefferson, 20 Fla., 432; Akin v. Freeman, 49 Ga., 51; Cory v. Carter, 48 Ind., 327, 17 Am. Rep., 738; Gray v. Cumberland Co., 83 Me., 435; Maxwell v. State, 40 Md., 273; People ex rel. Twitchell v. Blodgett, 13 Mich., 127; Lane v. Missoula Co., 6 Mont., 475; Smiley v. Sampson, 1 Neb., 56; Brown v. Wright, 13 N. J., 240; Allen v. Cook, 26 Barb., 374; Jackson v. Potter, 42 How. Pr., 260; New York v. Lord, 18 Wend., 126; Randell v. Richmond & D. Ry., 107 N. C., 748; State v. Sinks, 42 Ohio St., 345; Deddrick v. Wood, 15 Pa., 12; Buffham v. Racine, 26 Wis., 464.

In our own State, what have our courts held in regard to this matter? Murray v. State, 21 Texas Crim. App., 620, discusses this matter at length, quoting numerous authorities. It reads:

"The statute, article 683 of the Penal Code, is in the following words, viz.: 'If any person shall wilfully and mischievously injure or

destroy any growing fruit, corn, grain or other agricultural product or property, real or personal, of any description whatever, in such manner as that the injury does not come within the description of any of the offenses against property, otherwise provided for by this Code, he shall be punished by fine not exceeding one thousand dollars.'

"It is contended that, under a fair and necessary construction of the language of this article, the acts charged against the appellants in the information herein come plainly and legitimately within the purview of its language. The first question discussed is as to the proper punctuation of the language used, and it is contended that the grammar of the section favors the construction put upon the article by the prosecution.

"We deem the question of punctuation wholly immaterial, and we wish it distinctly understood that the matter of punctuation never entered, in the most remote degree, into the discussion and decision of the case, as shown by our previous opinion. On the contrary, we recognize to its fullest extent the rule, which, though embraced in the civil statutes, is, in our opinion, equally as applicable, and of binding force in criminal prosecutions, to the effect that 'grammatical errors shall not vitiate a law, and a transposition of words and clauses may be resorted to when the sentence or clause is without meaning as it stands, and in no case shall the punctuation of a law control or affect the intention of the Legislature in the enactment.' (Art. 3139, Rev. Stat.)

"In Shridley v. The State, 23 Ohio State, 130, it was held that punctuation may always be disregarded or made to conform to the clear meaning and intention of the statute. So, in Randolph v. Bayue, 44 California, 366, it was held that courts will not permit an erroneous punctuation of the statute, in printing it, to have the effect of giving it an absurd construction. Independent of our statutes, these rules are now of almost universal application in matters of statutory construction.

"Discarding, then, from consideration all rules regarding punctuation or grammar, we come down to the plain question as to the proper construction which should be placed upon the language used in said article; and, in order the better to be enabled to do this, it becomes necessary to resort to those plain and well established rules which have been adopted and settled by long usage as the best guides by which the courts should be governed in their judicial action on such questions.

"The leading and controlling rule in the construction of statutes, in fact, the primary and fundamental one, is to interpret them according to their true meaning and intent. To ascertain this intent it is the duty of the court to find, by other established rules, what was the fair, natural and probable intent of the Legislature. For this purpose the language employed in the Act is first to be resorted to. If

the words employed are free from ambiguity and doubt, and express plainly, clearly and distinctly the intent, according to the most natural import of the language, there is no occasion to look elsewhere.    (People v. Schoonmaker, 63 Barbour (N. Y.), 44, citing McCluskey v. Cromwell, 11 N. Y., 593.)

"We are aware that the rule of the common law which requires that penal statutes should be strictly construed, is abrogated in this State, and that there is now no distinction recognized with us in construing statutes, between those that are criminal or penal and those that are civil; but all are required to be construed alike liberally, with a view to carry out the intention of the Legislature. A general rule ·of construction is expressly provided in article 9 of the Penal Code, which reads: 'This Code, and every·other law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects, and no person shall be punished for an offense which is not made penal by the plain import of the words of a law.'    (Act of February 12, 1858, p. 56; Penal Code, art. 9.)

"That distinguished jurist and law writer, Mr. Dillon, in the case of The United States v. Clayton, discussing this subject, uses the following apt, pertinent and forcible language.    He says: 'This is, as above observed, a question of legislative intention.    Now, in what manner do the courts ascertain the legislative will?    We answer that it is ascertained primarily and chiefly by the language the Legislature has used to express its meaning.    We must suppose in the enactment of statutes, particularly statutes so important as the one under consideration, that Congress weighed well the words it employed.    In the office of interpretation, courts, particularly in statutes that create crimes, must closely regard, and even cling to the language which the Legislature has selected to express its purpose.    And when the words are not technical, or words of art, the presumption is a reasonable and strong one that they were used by the Legislature in their ordinary, popular or general signification.    Statutes enjoin obedience to their requirements, and, unless the contrary appears, it is to be taken that the Legislature did not use the words in which its commands are expressed in any unusual sense.    For these reasons, whose cogency is obvious, the law is settled that, in construing statutes, the language used is never to be lost sight of, and the presumption is that the language is used in no extraordinary sense, but in its common every day meaning.    When courts, in construing statutes, depart from the language employed by the legislator, they incur the risk of mistaking the legislative will, or declaring it to exist where, in truth, it has never had an expression.    The legitimate function of courts is to interpret the legislative will, not to supplement it, or to supply it.    The judiciary must limit themselves to expounding the law; they can not make it.    It belongs only to the legislative de-

partment to create crimes and ordain punishments. Accordingly, courts in the construction of statutable offenses have always regarded it as their plain duty cautiously to keep clearly within the expressed will of the Legislature, lest otherwise they shall hold an act or an omission to be a crime, and punish it, when in fact the Legislature had never so intended it. 'If this rule is violated,' says Chief Justice Best, 'the fate of the accused person is decided by the arbitrary discretion of the judges, and not by the express authority of the laws.' "

In no instance have we been able to find where our Court of Criminal Appeals held otherwise since its organization down to the present time, and our Supreme Court adopts the same rule of construction. Judge Gaines (Mills County v. Lampasas County, 90 Texas, 603), says: "Strictly speaking, there is but one rule of construction, and that is that the legislative intent must govern. All other canons of interpretation so called are but grounds of argument resorted to for the purpose of ascertaining the true meaning of the law."

We could quote numerous opinions of both courts announcing and adhering to that rule of construction or interpretation, but as these express the doctrine so positively and unequivocally we deem it useless. Again, Mr. Sutherland says: "Words and clauses in different parts of a statute must be read in a sense which harmonizes with the subject matter and general purpose of the statute. No clearer statement has been or can be made of the law as to the dominating influence of the intention of a statute in the construction in all its parts than that which is found in Kent's Commentaries: 'In the exposition of a statute the intention of the law maker will prevail over the literal sense of the terms, and its reason and intention will prevail over the strict letter. When the words are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the remedy in view; and the intention is to be taken or presumed according to what is consonant with reason and good discretion.' " Suth. St. Const., p. 219.

With this rule of construction and the words of the statute before us, what other construction could be given than that the law applies to all territory where prohibition is in force in this State. The language is: "If any person shall engage in or pursue the occupation or business of selling intoxicating liquors in any county, etc., in which the sale of intoxicating liquors *has been or shall* hereafter be prohibited," etc. Again, in section 4 it is emphasized that the law is to apply to territory where prohibition was then in force. It reads: "The inadequacy of the laws of this State to prohibit the unlawful sale of intoxicating liquors in counties, etc., where the sale of intoxicating liquor *has been prohibited* by law, creates an emergency," etc.

If the Legislature had the authority and power there can be no question of their intention. The wording of the Act is plain and mandatory, and to give any other construction to the language used is impossible. It is not a retroactive or ex post facto law, because it

does not seek to punish men for any offense theretofore committed, but only to punish those who pursue the occupation made penal after the enactment of the law in any territory where prohibition is in force. What provision of the Constitution restrains the Legislature from passing the Act? None we can find. In fact, Judge Davidson, who dissents from this construction of the law, said in his dissenting opinion (127 S. W. Rep., 1049): "There is one other phase of the majority opinion that I desire to notice. The majority opinion is written apparently, if not really, upon the theory that this Act was attacked as being unconstitutional. I do not so understand the question presented," and he holds the Act not violative of the Constitution, but that it did not become effective in any territory where prohibition had theretofore been enacted, but became effective only in such territory as might thereafter adopt prohibition. This holding is in direct conflict with the specific terms of the Act, and the clearly expressed intention of the Legislature. And if the Constitution does not inhibit the Legislature, what power is there that can do so? Our presiding judge then held and now holds that the Legislature is powerless to pass any law to aid in the enforcement of the local option or prohibition law in territory which has heretofore adopted it, unless they should hold an election after the passage of such remedial legislation, and to this we do not agree, and do not think the decisions of this court require such construction. The leading case upon which it is sought to build up such a theory is Dawson v. State, 25 Texas Crim. App., 670. The question decided in that case, and the only one passed on, is that Erath County having adopted local option, when, by the terms of the law, counties were permitted to vote on the question whether or not the sale of intoxicating liquors should be prohibited every year. Subsequent to its adoption, the Legislature changed the law so that this question could be voted on only once in every two years. The court held that when Erath County voted to adopt the law, it had the right to repeal it at the end of one year. The question of whether the sale of intoxicating liquors shall be prohibited is left by the Constitution to a vote of the people of any given territory, and the court says in the Dawson case: "If the power exists in the Legislature to deprive the locality of the right to have another election for the period of two years, the same right exists to deprive them of such right for ten, twenty or other number of years, and thus the Legislature would fasten upon the locality a law which they adopted as an experiment for a short period of time, and from the practical operation of which, during that period, they may have become convinced should be repealed, never imaging when they voted upon the issue, that the Legislature would, or could, continue the law in operation in opposition to the will of a majority of the qualified voters of the locality." This is in consonance with the Constitution, which reads:

Vol. LXI Crim.—25.

"Art. 16, sec. 20.  The Legislature shall at its first session enact a law whereby the qualified voters of any county, justice precinct, town, city (or such other subdivision of a county as may be designated by the Commissioners' Court), may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

Under this, what is it the people of the given territory are to determine?  It is whether the sale of intoxicating liquors shall be prohibited.  And the learned judge in the Dawson case, supra, was right in saying that this question could not be taken away from the people of the given territory, and the legislative will substituted in lieu thereof.  But what else are the people of the territory to determine?  Nothing more and nothing less other than "shall the sale of intoxicating liquors be prohibited?"

We are aware that under the authority of the Dawson case there has grown up in the decisions of this State. the doctrine that the penalty for making a single sale of intoxicating liquors can not be changed.  (See Robinson v. State, 26 Texas Crim. App., 82; Lawhon v. State, 26 Texas Crim. App., 101; Ex parte Bains, 39 Texas Crim. Rep., 62, and Lewis v. State, 58 Texas Crim. Rep., 351, 127 S. W. Rep., 808.)

The doctrine announced in the case of Ex parte Bains, 39 Texas Crim. Rep., 62, above referred to, which attempted to broaden the scope of the decisions in Dawson v. State, and Robinson v. State, supra, was specifically overruled in Snearley v. State, 40 Texas Crim. Rep., 507.  The rule in the Snearley case has been adhered to by our court since that date, and was announced and maintained in vigorous terms by a majority of the court in the Fitch case, 58 Texas Crim. Rep., 366, 127 S. W. Rep., 1040—the same men who also decided the Lewis case hereinbefore referred to.  Without discussing the rule laid down in the Lewis case, that for a single sale, the Legislature has no power to alter the penalty (for it is not involved in this case) further than it is sought to broaden its scope and be held as authority that the Legislature can adopt no remedial legislation in territory where local option has already been adopted, no matter how flagrant the evil, and to which as we have hereinbefore stated we do not give our assent, we will take a retrospective view of legislation on this question.

When the law was first adopted, in 1876, the only thing made penal was a sale of intoxicating liquors, and each sale was a separate violation of the law.  Since that day many evils have arisen, the ingenuity of man has devised many means for violation of the law.  At first the law provided that liquor might be sold on the prescription of a physician.  An evil apparently grew up out of that provision, and since then a limitation has been placed on physicians in giving prescriptions, and it is made a misdemeanor for a physician to give a prescription unless a person is actually sick and in need of the

stimulant. (Penal Code, art. 405.) This has been enforced in counties where prohibition has theretofore been adopted, as well as those adopting it subsequent to its enactment. Art. 404 provides that the prescription must be marked "cancelled," and the liquor shall not be drunk on the premises, and a violation of the provision is made punishable as a misdemeanor. This, too, has been applied to all prohibition territory.

Article 403, Penal Code, provides that but one sale can be made on any prescription, and the person selling is not only required to mark it "cancelled," but he is also required to make a report and file the prescriptions with the proper official.

Under the law as first adopted, and before the adoption of article 407 of the Penal Code, the rule of decision was that repeal of the local option law annulled a conviction for violation of the law pending on appeal. Under article 407, it is held that repeal of the law does not affect a prosecution, and one who has violated the law may still be punished notwithstanding such appeal, clearly and unequivocally engrafting a new provision on the law.

In article 406 is adopted what is known as the "blind tiger Act," enforcing a more severe penalty than for a simple sale. This has been applied in all counties regardless of when the law was adopted.

It is also provided that when there is posted up a United States interval revenue liquor or malt license, it shall be prima facie proof. In Floeck v. State, 34 Texas Crim. Rep., 314, this is held not in violation of the Constitution, and it is enforced in all counties regardless of when prohibition was adopted.

The Act levying an occupation tax on all express companies delivering and accepting pay for "C. O. D." liquor shipments in local option territory has been enforced in all counties where prohibition had been adopted, regardless of date of its adoption. In Craddock & Co. v. Wells-Fargo Express Co., 125 S. W. Rep., 59, our courts held: "It is, we think, public history, that a custom had grown up in the State, for dealers in intoxicating liquors, to ship packages of the same by express to counties and localities in which local option was in force consigned to fictitious persons or to persons who had not ordered the same, and then write to some person in such local option territory to call at the express office and get the package and pay the charges thereon. The express company would then, upon request, deliver the package and collect the charges, and return the money to the dealer. This practice had the effect of defeating prohibition in local option territory. It was the object of the Legislature to prohibit or at least regulate this custom. This, in our opinion, the Legislature had authority to do. San Antonio & A. P. Ry. Co. v. State, 79 Texas, 264, 14 S. W., 1063. It had authority to abrogate the C. O. D. feature of the liquor traffic, or to impose any burden thereon which tended to prevent the evasion of the local option statutes in counties or districts in which local option had been adopted. Higgins v.

Rinker, 47 Texas, 393; Pleuler v. State, 11 Neb., 547, 10 N. W., 488; Ex parte Dupree, 101 Texas, 150, 105 S. W. Rep., 493; Joliff. v. State, 53 Texas Crim. Rep., 61, 109 S W., 176."

It is difficult for us to conceive why an express company can be punished for pursuing the occupation of delivering C. O. D. ship- ments of intoxicating liquor without having paid the tax, and yet the law against an individual who pursues the "occupation of selling" intoxicating liquors in the same territory can not and must not be enforced.

The law providing that in territory where local option is in force, upon a proper showing, the district judge may issue a writ of injunc- tion restraining a person from selling intoxicating liquors in violation of the law, and to punish for contempt of its order, has been sus- tained by the Supreme Court and this court, and applied to all coun- ties where prohibition is in force.

The Act of the Twenty-ninth Legislature, prohibiting a person pur- suing the occupation of storing liquors for others in prohibition ter- ritory, to permit such liquors to be drunk on the premises, has been sustained, and applied to all counties, and this having been the policy of our law since the adoption of the provision of the Constitution, we can not get our consent to hold, that while all these other amendatory and remedial laws have been put in force in local option territory, and yet this statute which seeks to punish the occupation of pursuing the business of selling intoxicating liquors does not apply only in such territory as may hereafter adopt local option. To hold that when the citizenship of any given territory shall prohibit the sale of in- toxicating liquors by a majority vote, a right guaranteed to them under the Constitution, if the avarice or greed of man shall cause them to devise or discover some means whereby the provisions of the law may be evaded, and that the Legislature is powerless to adopt remedial measures or adopt any Act that will effectuate the enforce- ment of the law, is to us contrary to all rules of law. If that is to be the rule, why is it not also true that if when a local option elec- tion is held and a county votes against the adoption of the law and in favor of licensing the sale of intoxicating liquors that the license laws then in force are not construed a part of the law, and the Leg- islature powerless to adopt any corrective or remedial measures or to alter or amend the license law that will become effective in those counties that voted in favor of licensing the sale of intoxicating liquors, until they shall again vote on the law? This has never been held to be the law, and yet the principle is the same. We will not cite other authorities, but simply refer to Fitch v. State, supra, and authorities there cited by the majority of the court.

Our excuse for writing thus at length is that our presiding judge has again written an opinion in which he seeks to overrule the Fitch case, and not concurring in his opinion, we thought it best to set out our views at some length.

We have carefully considered all the grounds contained in the motion for a new trial, and finding no reversible error the judgment is affirmed.

*Affirmed.*

Davidson, Presiding Judge, dissents.

PRENDERGAST, JUDGE.—I fully concur in the opinion and disposition of this case by Judge Harper.

I will not attempt, because I think it unnecessary, to discuss at any length the question of the sufficiency of the indictment in this case. But I will simply give some of the rules and statutes which I think particularly applicable to the question.

I think it is elementary that it is competent for the Legislature to enact rules for the construction of statutes, present or future, and when it has done so each succeeding Legislature, unless the contrary intention is plainly manifested, is supposed to employ words and frame enactments with reference to such rules. Such statutory rules of construction may be only declaratory of the common law, or they may operate to change the common law rule of construction. It is the duty of the courts to give such construing acts and rules their practical application as far as possible. 36 Cyc., 1105; Snyder v. Compton, 87 Texas, 374; Great Northern R. R. v. U. S., 208 U. S., 452. It seems that one of the common law rules for the construction of statutes is to this effect, where an exception is in the enacting clause or is incorporated therein by words of reference, the indictment must negative the facts that constitute the exception. This rule is qualified, or this is also a rule on the same subject, to wit: A negative averment need not be so minute or so nearly in the statutory words as must an affirmative one; but any negation in general terms covering the entire substance of the matter will suffice. Bish. Cr. Pr., sec. 641. Our Supreme Court, when it had criminal jurisdiction, on the subject of sufficient averments to negative exceptions in a statute, in the case of State v. Duke, 42 Texas, 455, pointedly said: "In regard to some of these averments it is held that whatever amounts to a substantial negative is sufficient."

But as I conceive, we do not have to depend upon the rules of the common law for the sufficiency of such pleadings altogether, because our Penal Code and Code of Criminal Procedure have the following rules, or statutory enactments, on the subject which I think have a bearing upon this subject and necessarily control the courts in the use of the common law rules of construction if in conflict therewith. They are: Penal Code, article 4: "The principles of the common law shall be the rule of construction, when not in conflict with the Penal Code or Code of Criminal Procedure, or with some other written statute of the State."

The Code of Criminal Procedure has the following: Article 25: "The provisions of this Code shall be liberally construed, so as to

attain the objects intended by the Legislature: the prevention, suppression and punishment of crime."

Article 448: "An indictment for any offense against the penal laws of this State shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment. . . ."

Article 462: "Words used in a statute to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words."

Article 464: "An indictment shall not be held insufficient nor shall the trial, judgment or other proceedings thereon be affected by reason of any defect or imperfection of form in such indictment which does not prejudice the substantial rights of the defendant."

Article 452: "In an indictment for selling intoxicating liquors in violation of any law of this State, it shall be sufficient to charge that the defendant sold intoxicating liquors contrary to law, naming the person to whom sold, without stating the quantity sold; and under such indictment any act of selling in violation of the law may be proved."

Evidently this court had those statutes and rules in mind when it laid down the form of the indictment under this statute in the case of Mizell v. State, 59 Texas Crim. Rep., 226, 128 S. W. Rep., 127, which was afterwards approved by this court in Murphy v. State, 59 Texas Crim. Rep., 479, 129 S. W., 138; Sutphen v. State, 59 Texas Crim. Rep., 500, 129 S. W., 144, and Payne v. State, 60 Texas Crim. Rep., 322, 129 S. W., 1197. And I think, tested by all these rules and decisions, the indictment in this case sufficiently negatived the exceptions contained in the statute defining the offense.

ON REHEARING.

May 3, 1911.

HARPER, JUDGE.—On a former day of this term the judgment herein was affirmed. Appellant has filed a motion for rehearing, and insists that the court erred in holding the indictment valid, and that it was not necessary to negative the exceptions further than was done, and has filed an exhaustive brief. In addition thereto an able oral argument was made, and we have given the question careful and painstaking investigation, inasmuch as our eminent presiding judge holds to a different view.

Appellant criticises the original opinion in upholding the opinion of this court in the Mizell case, 59 Texas Crim. Rep., 226, 128 S. W. Rep., 127, and says that the question here involved was not raised

in the Mizell case, but that it was involved in the Keith case, 58 Texas Crim. Rep., 418, 126 S. W. Rep., 569, and that this court held it necessary to negative the exceptions in the statute. If there be a conflict in the decisions of the court in these two cases, we might merely say that the Mizell case was rendered later, and by the same judges that rendered the opinion in the Keith case, and if either overruled the other, the Mizell case overruled the Keith case. But it is not necessary to so hold as the indictment in this case contains the exception that the Keith case says it should contain, in that it says the sale was made "in violation of said law," which words are equivalent to the words in the statute and in the Keith case. However, we want to be frank enough to say, that we disagree with the holding in the Keith case, and to hold that it is only necessary to negative an averment in the statute where it is descriptive of the offense, regardless of in what portion of the statute the exception may be contained. We believe under mature reflection that was the holding of the court in the Mizell case, and it was intended to be so announced. It is folly to contend that the court did not view the indictment from every viewpoint, and pass on the question of the validity of this indictment from every point that could be raised. It has been the holding of this court in an unbroken line of decisions, that if the indictment is defective, this court will reverse and dismiss the case, wherever and whenever raised, or whether raised or not by the appellant. In the case of Maddox v. State, 14 Texas Crim. App., 447, it was held by Judge Hurt, that "the indictment being fatally insufficient, we will not permit it to stand, though urged by defendant to do so." We have too high an opinion of the eminent judges who rendered the opinion in the Mizell case to think they would commend a form of indictment to the court and prosecuting officers had they not maturely considered it from every possible viewpoint, whether raised or not, and a careful study of the authorities has convinced us they were right in so holding.

The other criticism of the opinion in appellant's brief we do not care to notice, but will proceed with the only question in the case: Is it necessary to allege the exceptions under which intoxicating liquors may be sold under the statute, and if so, is the allegation "in violation of said law" a sufficient negation?

Appellant quotes from the case of United States v. Cook, 84 U. S., 168, and we want to say that we agree to the holdings of the court in that case. It is held:

"Commentators and judges have sometimes been led into error by supposing that the words 'enacting clause,' as frequently employed, mean the section of the statute defining the offense, as contradistinguished from a subsequent section in the same statute, which is a misapprehension of the term, as the only real question in the case is, whether the exception is so incorporated with the substance of the clause defining the offense as to constitute a material part of the

description of the acts, omission or other ingredients which constitute the offense. Such an offense must be accurately and clearly described, and if the exception is so incorporated with the clause describing the offense that it becomes in fact a part of the description, then it can not be omitted in the pleading; but if it is not so incorporated with the clause defining the offense as to become a material part of the definition of the offense, then it is matter of defense and must be shown by the other party, though it be in the same section or even in the succeeding sentence, citing 2 Lead. Cr. Cas., 2d ed., 12; Vavasour v. Ormrod, 9 Dowl. & Ryl., 597; Spieres v. Parker, 1 T. R., 141; Com. v. Bean, 14 Gray, 52; 1 Stark Cr. Pl., 246."

Again, in Com. v. Hart, 11 Cush., 130, it is held: "Text writers and courts of justice have sometimes said that if the exception is in the enacting clause, the party pleading must show that the accused is not within the exception, but where the exception is in a subsequent section or statute, that the matter contained in the exception is matter of defense and must be shown by the accused. Undoubtedly that rule will frequently hold good, and in many cases prove to be a safe guide in pleading, but it is clear that it is not a universal criterion, as the words of the statute defining the offense may be so entirely separable from the exception that all the ingredients constituting the offense may be accurately and clearly alleged without any reference to the exception." And this rule is adopted by Judge Hurt in the opinion cited in the original opinion in this case.

The Act in question reads as follows: "If any person shall engage in or pursue the occupation or business of selling intoxicating liquors (except as permitted by law) in any county, justice precinct, city, town or subdivision of a county in which the sale of intoxicating liquor has been or shall hereafter be prohibited under the laws of this State, he or she shall be punished by confinement in the penitentiary not less than two nor more than five years."

The fact that the exception is also in the *caption* is immaterial under all the cases, but the exception being in the body of the Act, it becomes material whether or not the exception is descriptive of the offense. Were we to be hypercritical we might hold that the exception is not in the enacting clause. In section 29 of article 3 of the Constitution of this State it is provided: "The enacting clause of all laws shall be, 'Be it enacted by the Legislature of the State of Texas,'" but this is not the definition given in speaking of the "enacting clause" by our courts. The enacting clause is that part of a statute in which the offense is defined, and those who have the opinion that it refers or relates to the "caption" of the Act have a misconception of the term, as we would have if we took only the literal definition given in the Constitution.

In the article above quoted it will be noted that the offense defined and made penal is that of pursuing the business or occupation of selling intoxicating liquors in territory in which the sale of intox-

icating liquors has been prohibited (except as permitted by law), and we find the exceptions in a separate and distinct article of the Penal Code, being article 403.

For a single sale of intoxicating liquors in violation of the local option law it has always been held that the indictment need not negative the exceptions contained in this article of the Code, although they are exceptions under which a sale of intoxicating liquors can be made, it being held they are not descriptive of the offense, but are matters of defense. (See Wade v. State, 53 Texas Crim. Rep., 184; Chapman v. State, 37 Texas Crim. Rep., 167; Gilbert v. State, 32 Texas Crim. Rep., 596; Bruce v. State, 36 Texas Crim. Rep., 57; Perkins v. State, 34 Texas Crim. Rep., 429; Shields v. State, 38 Texas Crim. Rep., 252; Frickie v. State, 39 Texas Crim. Rep., 254; Barker v. State, 47 S. W. Rep., 980; Racer v. State, 73 S. W. Rep., 968; Zollicopper v. State, 38 S. W. Rep., 775; Loveless v. State, 49 S. W., Rep., 601; Green v. State, decided at this term of the court, and authorities cited in these opinions.)

Now we are asked, although it has been held unnecessary to negative the exceptions in making a sale in an unbroken line of authorities, to hold that it is necessary to negative these exceptions for pursuing the business or occupation of making a sale, simply because in the body of the Act the words "except as permitted by law" are used, and to hold that it is descriptive of the offense. Unless it is descriptive of the offense, the authorities quoted by appellant will be found, upon analysis, to hold that it is not necessary to negative the exceptions. Such has been the holding of this court in the past, and in the case of Commonwealth v. Jennings, 121 Mass., 47, it is held:

"On the other hand, it appears to us to be established, by a great preponderance of authority, that, when an exception is *not stated in the enacting clause otherwise than by merely referring to other provisions of the statute,* it need not be negatived, unless necessary to a complete definition of the offense.

"By St. 27 Eliz. c. 2, sec. 2, it was enacted that it should not be lawful for any Jesuit or other priest, born in England, and ordained or professed since the beginning of the reign by any authority derived from the See of Rome, to come into or remain in the realm after forty days from the end of the then session of Parliament, 'other than in such special cases, and upon such special occasions only, and for such time only, as is expressed in this Act,' upon the penalty of being adjudged and punished for high treason. By subsequent sections, it was provided that the Act should not extend to any who should, within a certain time specified, submit themselves and take the oath of supremacy, or who should be too ill to depart out of the realm. It was resolved by Chief Justice Popham and other judges, 'that the better course was to omit this in the indictment, notwithstanding it be comprised in the body of the Act, in the same manner as if it had been only

in a proviso; in which case it is to the prisoner to help him by means of such a proviso, if he can do it; for the words "other than," etc., are but as referring to the provisions subsequent in the statute, in which case this matter shall be used but as the proviso itself shall be.' Southwell's `case, Pop. 93.

"Under the St. of 22 Geo. III. c. 84, the enacting clause of which prohibited other persons than the scavenger from carrying away dust in a certain parish, 'except in the place hereinafter mentioned,' which were specified in subsequent sections of the Act, it was held that, in an action for a violation of the statute, these exceptions need not be negatived. Ward v. Bird, 2 Chit. 582.

"So in Hart v. Cleis, 8 Johns, 40, it was held that, in an action for a penalty under a section which prohibited the exportation of slaves, 'except as hereinafter provided,' the plaintiff need not negative the proviso of a succeeding section, which allowed persons traveling through or removing from the State to take their slaves with them.

"Our own St. of 1852, c. 322, sec. 1, enacted that no person should be allowed to sell any spirituous or intoxicating liquors, 'except as is hereinafter provided.' Section 7 provided that if any person should sell any spirituous or intoxicating liquors 'in violation of the provisions of this Act,' he should be punished by fine or imprisonment. In prosecuting for this penalty, it was held to be unnecessary to negative the exceptions which were stated in subsequent sections of the statute. Commonwealth v. Tuttle, 12 Cush. 502. Like decisions were made in Commonwealth v. Hill, 5 Grat., 682, and in State v. Miller, 24 Conn., 522. See alsa United States v. Cook, 17 Wall., 168, 173-176."

Again in State v. Ah Chew, 16 Nev., 50, it is held: "There are cases cited in Wharton's Cr. L. secs. 378, 379, where the language employed would seem, at first blush, to sustain the position contended for by appellant. But from a careful examination of all the authorities upon this subject, we are of opinion that it is only necessary in an indictment for a statutory offense, to negative an exception to the statute, when that exception is such as to render the negative of it an essential part of the definition or description of the offense charged. It is the nature of the exception, and not its locality, that determines the question whether it should be stated in the indictment or not. The question is, as stated in State v. Abbey, 'whether the exception is so incorporated with, and becomes a part of the enactment, as to constitute a part of the definition or description of the offense; for it is immaterial whether the exception or proviso be contained in the enacting clause or section, or be introduced in a different manner.' 'It is the nature of the exception, and not its location,' which determines the question. Neither does the question depend upon any distinction between the words 'provided' or 'except' as they may be used in the statute." (See also Metzker v. People, 14 Ill.,

101; Stanglein v. State, 17 Ohio St., 453; State v. Miller, 24 Conn., 522; State v. McGlynn, 34' N. H., 422; State v. Wade, Id., 495.)

In Territory v. Burns, 6 Mont., 74, it is held: "It is a rule of pleading in criminal law that the indictment should set forth all that is necessary to constitute a complete description of the offense charged. This is especially true of statutory offenses, which is the character of the misdemeanor alleged in the above indictment. The indictment in such case should state all the ingredients of which the offense charged is constituted as contained in the statute which declares and defines such offense. When that is done, the prosecution has set forth a prima facie case, which is all that the law requires.

"When an exception is stated in the statute, it is not necessary to negative such exception unless it is a constituent part of the definition of the offense. The exception must be a constituent or an ingredient of the offense declared by the statute, in order to require that it shall be negatived by the indictment. It would appear to have formerly been the rule, that, 'if the exceptions themselves are stated in the enacting clause, it will be necessary to negative them in order that the description of the crime may in all respects correspond with the statute.'

"But however correct or otherwise this view may be, the current of authority now is that it makes no difference in what part of the statute the exception may appear; whether in what is commonly called the enacting clause or not. The criterion which determines the necessity to negative such exception is that it be a constituent or ingredient of the offense. In other words, that such exception is necessary to its complete definition. When the exception is not a part of the definition of the offense, and in this way does not, therefore, become a part of the enacting clause, it is a matter of defense. The enacting clause of a statute is not necessarily alone, or only that which purports to be such, but comprehends every part of the statute which should be stated in order to define the offense with clearness and certainty. When this view of what constitutes the enacting clause is considered, it will be seen that the rule in relation to what should be set forth in indictments for statutory crimes has been uniform. The exception contained in the above statute is not a part of the definition of the offense." United States v. Cook, 17 Wall., 168; State of Nevada v. Ah Chew, 16 Nev., 50; Territory v. Scott, 2 Dakota, 212; State v. Robey, 8 Nev., 312; People v. Nugent, 4 Cal., 341; Foster v. People, 1 Col., 294; Commonwealth v. Hart, 11 Cush., 130; Commonwealth v. Jennings, 121 Mass., 47; Commonwealth v. Byrnes, 126 Id., 248; Commonwealth v. McClanahan, 2 Met. (Ky.), 8; Fleming v. People, 27 N. Y., 329.

In Stanglein v. State, 17 Ohio St., 453, it is held: "A negative averment to the matter of an exception or proviso in a statute is not requisite in an indictment, unless the matter of such exception or

proviso enter into and become a part of the description of the offense or a qualification of the language defining it."

In State v. Dry Fork Railroad Co., 50 W. Va., 235, in discussing this question, it is held: "The better rule, however, is that no matter whether the exception or proviso is in the enacting clause or not, if it is not a part of the description of the offense in the statute, it need not be negatived in the indictment,' citing 10 Enc. of Pl. & Prac., 495.

In Kitchens v. State, 116 Ga., 847, it is held: "Where a statute provides in general terms that the commission of a given act by any person shall constitute a penal offense, and then provides that the law thus framed shall not apply to a given class of persons, it is not necessary that an indictment based upon the statute should aver that the accused does not belong to the class of persons thus excepted from the operation of the law."

In Gee Wo v. State, 36 Neb., 241, it is said: "From an examination of all the cases the true rule appears to be a negative averment to the matter of an exception or proviso in a statute is not requisite in an indictment or information, unless the matter of such exception or proviso enters into or becomes a part of the description of the offense, or a qualification of the language defining it."

In Villines v. State, 96 Tenn., 141, it is held: "Whether an indictment shall negative a proviso contained in the statute creating an offense depends not upon the place that the proviso or exception occupies in the statute, but rather its relation to that clause of the statute defining the offense. . . . If the proviso is so expressed in the statute as to be incorporated in the definition of the offense, the indictment must negative the proviso, otherwise it need not be done, although the proviso may be contained in the section that defines the offense."

And the rule is tersely stated in section 238 of Wharton's Pleading and Practice, "Unless the proviso is so expressed in the statute as to be incorporated in the definition of the offense, it is not necessary to state in the indictment that the defendant does not come within the exception."

In the case of State v. O'Donnell, 10 R. I., 472, it is said: "Much confusion has been caused by using the phrases, 'enacting clauses,' 'purview,' 'proviso,' and 'exception,' in different senses. The case of State v. Abbey, 29 Ver., 60, contains the most sensible remarks on these rules we have seen—'The rule is founded on the general principle, that the indictment must contain the statement of those facts which constitute an offense under the statute.' A prima facie case must be stated, and matter of excuse must be shown by the defendant. 'The question is whether the exception is so incorporated with and becomes a part of the enactment as to constitute a part of the definition or description of the offense.' It is the nature of the exception and not its location which is incorporated."

And in State v. Rush, 13 R. I., 198, it is held: "What exceptions in a penal statute are to be negatived in pleading, and what are merely matters of defense, was quite fully considered by this court in O'Donnell's case. The conclusion there reached was that, the question was to be determined by their nature, and not their location with reference to the enacting clause."

The same rule is announced in the case of State v. O'Gorman, 68 Mo., 179.

In Commonwealth v. McClanahan, 59 Ky., 8, it is held: "Nor is it necessary to allege that he is not within such proviso even though the purview should expressly notice them, as by saying none shall do the act prohibited, except in the cases thereinafter excepted," citing Wharton's Criminal Law, 190; 2 Yeiger, 233; Commonwealth v. Young, 7 Monroe, 1.

In vol. 8, notes on U. S. Reports, it is stated: "The following cases, considering indictments on statutes with exceptions, cite the rule with approval, and hold in accordance therewith, that the exception need not be negatived: Nelson v. United States, 12 Sawy., 285, 30 Fed., 116, and Shelp v. United States, 81 Fed., 694, 48 C. S. App., 379, collecting cases, prohibiting sale of liquor, except for medicinal purposes, is good; United States v. Cook, 13 Sawy., 496, 36 Fed., 897, prohibiting the fencing public lands unless defendant was claiming title in good faith; United States v. Stone, 49 Fed., 850; prohibiting the cutting of timber on public land, unless justified under various land laws; Packer v. People, 26 Colo., 306, 57 Pac., 1087, statute of limitation need not be negatived; Territory v. Scott, 2 Dak., 212, 6 N. W., 437, 438, holding an indictment sufficient without negativing any instance in which act was allowed; Baeumel v. State, 26 Fla., 71, 75, 7 So., 372, 373, collecting cases, prohibiting sale of liquors, except by a druggist; State v. Van Vliet, 92 Iowa, 476, 61 N. W., 241, collecting cases, under a general prohibitory liquor law, with exceptions as to certain localities, this need not be negatived; Nesbit v. State, 7 Kan. App., 298, 54 Pac., 328, Sunday law, prohibiting work, except certain callings; Commonwealth v. Jennings, 121 Mass., 52, 23 Am. Rep., 253, indictment for polygamy need not negative the absence of first spouse for seven years; Thompson v. State, 54 Miss., 740, similar to cited case; State v. Bockstruck, 136 Mo., 335, 38 S. W. 320, prohibiting coloring of oleomargarine, except for export; State v. Elam, 21 Mo. App., 291, prohibiting sale of liquor, except for sacramental purposes; Territory v. Burns, 6 Mont. 72, 9 Pac. 434, collecting cases, prohibiting concealed weapons, except to peace offiers; United States v. Fuller, 5 N. Mex. 80, 20 Pac, 177, indictment for embezzlement need not negative a proviso that it was not delivered to addressee; Villines v. State, 96 Ten. 141, 33 S. W. 923, 924, prohibiting druggist from selling without register, unless a physician; Mosely v. State, 18 Texas App., 311, Sunday law, prohibiting sales, except burial material and provisions, before 9 a. m.; State v. Bevins, 70 Vt. 574, 41 Atl.,

656, statute requiring license from peddlers, except where they sell from own land, Miller v. Shields, 124 Ind., 166, holding where a feme covert can not be a surety, it is not necessary to negative this in a suit upon a note; Rowell v. Janvrin, 151 N. Y. 60, holding suit to enforce stockholders' liability for debts need not negative exceptions, which excuse them, collecting cases."

Able counsel for appellant pay high tribute to Justice O. M. Roberts, in which we cordially join, but the construction they place on the opinion of Judge Roberts in the Hewitt case, 25 Texas, 722, is not a correct construction, as will be seen by reading the opinion in full. In that case it is held:

"If there was a general prohibition against selling liquors less than a quart, or if the Legislature have the power to withdraw the protection from liquor as property, and prohibit its sale entirely, and in any quantity, and had clearly done so by direct enactment, then these words would charge an act to have been done, which, by law, is declared to be an offense. . . . The act of sale coupled with the omission, and not the act of sale by itself, constitute that which, by law is declared to be an offense (under the statute in question in that case). The *gist* of the *offense* is the *omission*.

To this holding we give our assent. Whenever the omission or exception is the gist of the offense, it must be negatived in the indictment. Our prohibition, or local option statutes, when the people adopt them in a given territory, prohibit the sale of intoxicating liquors in any quantity in that territory, and this court has universally held that the exceptions need not be stated in the order declaring the result. Chapman v. State, 37 Texas Crim. Rep., 167; Gilbert v. State, 32 Texas Crim. Rep., 596; and in the case of Ex parte Perkins, 34 Texas Crim. Rep., 429, Judge Davidson, speaking for the court, says: "It was not necessary to set out the exceptions in regard to the sales of intoxicating liquors in the order declaring the result of the local option election, and prohibiting the sale of such intoxicants in the given territory. The law makes these exceptions whether included in the order or not."

In Shields v. State, 38 Texas Crim. Rep., 252, it is held that the order for the election need not notice the exceptions. (Loveless v. State, 49 S. W. Rep., 601; Frickie v. State, 39 Texas Crim. Rep., 254.)

We have already given the authorities that the indictment charges a sale, without negativing the exceptions, in the beginning of this opinion.

The exceptions are not part of the offense, and are not necessary in defining the offense—the offense is pursuing the business of selling intoxicating liquors in a territory where it is prohibited; in the language of Judge Roberts, "the prohibition is general, and applies to the sale of liquors in any quantities." That a different article permits a sale to be made for sacramental purposes, or in cases of

sickness, on the prescription of a physician, does not make such matters a part of the definition of the offense.

Again, the case of Duke v. State, 42 Texas, 455, is referred to as supporting the contention of appellant, but a careful reading of that case will show that it supports the holding of this court in this case. In that case, in holding that it was necessary to negative the exception contained in that statute, the court says: "The Legislature has not attempted to make the carrying of a pistol an offense. The enacting clause itself excepts certain officers in actual service, and any one having reasonable ground to fear attack. Tested by the rule above stated, the indictment is defective. But in truth, not only are these exceptions *descriptive of the offense,* but the provisos, not perhaps embraced in the enacting clause, are *equally parts of that description.* If the latter could be regarded as properly provisos, the place they occupy would make it unnecessary to negative them. But in truth, they are all, those introduced by the word *unless,* and those by the word *provided,* in legal effect qualifications of the enacting clause. *It is only by virtue of them that the Act becomes a regulation instead of a prohibition.*" And it was held necessary to negative the exceptions in that statute because it was said the exceptions "being essential parts of the description of the offense."

In this case we are not dealing with the *regulation* of the sale of liquors, but the *prohibition* of the sale, and the fact that under a given condition an isolated sale may be made, does not render it a part of the definition of the offense. In each case cited by appellant, (if the article being construed is considered) it will be seen that it is only where the exception is a part of the definition of the offense, has it ever been held that it is necessary to negative the exceptions. While at times some loose expressions may have been used, but the real holding in each case has been that where the exception is not part of the description of the offense, it need not be negatived in the indictment.

In Brown v. State, 9 Texas Crim. App., 171, Judge Clark says: "The rules of pleading do not require that such exceptions be negatived in the indictment, (speaking of a statute) as they do not constitute a part of the description of the offense."

These are the leading cases relied on by appellant in his able and extended brief, and we have shown wherein we think they do not support his contention, but are authority for the holding in this case, and each case cited could be taken up and distinguished, and shown not to support the contention of appellant, but to hold and to hold only, that an indictment must charge the elements of an offense, and all such parts of the law as are descriptive of the offense. To this we agree, but as the exceptions in this case form no part of the offense, and are not descriptive of the offense, the motion for a rehearing is overruled.

We have given to this question much thought and study, have read

the authorities from almost every state in the Union, and some English authorities, as will be seen by the citations herein, for the reason we wish to announce a correct rule of pleading, and we hold that it is immaterial in what part of a statute an exception appears, if it is a part of the definition of an offense, or descriptive of an offense, the exception must be negatived in the indictment; but if it is not a part of the offense, nor descriptive of the offense, it is likewise immaterial in what part of the statute the exception appears, it need not be negatived in the indictment. This conclusion, we believe, is supported by the great weight of authority. The contention that the words "except as permitted by law," appearing in the body of the Act, renders them descriptive of the offense, is not supported by sound logic or reason, and is not supported by the authorities of this State. We would call especial attention to the case of Commonwealth v. Jennings, 121 Mass., 51, herein quoted from, and the other authorities herein quoted and cited.

The motion for rehearing is overruled.

*Overruled.*

Prendergast, Judge.—I concur.

DAVIDSON, Presiding Judge (dissenting).—I have been unable to agree with my brethren in the affirmance of this case. The final disposition of the appeal has centered itself in the main question of the sufficiency of the indictment. My brethren have written much and cited many cases and quoted from many authorities to sustain the proposition that it is not necessary to negative the exemptions or exceptions in the enacting clause setting out the definitions of the offense. I might readily agree with them that it is immaterial in what part of the Act of the Legislature the ingredients or elements of the offense may be found. Wherever found they must be charged in the indictment, and where the exemptions or exception enters into or forms a part of the definition of the offense and exempts from punishment under other portions of the definition, it is under all the authorities, as I understand them, necessary to negative the exemptions or exceptions and the indictment must exclude from the operation of the law parties who come within the exemption or exception. In order to make the party liable under that state of case he must fall outside of and be excluded from the operation of the statute or rather the exemption. Many of the cases cited by my brethren have no application to the question at issue, and many of the cases have been diverted from their proper bearing in regard to the question decided in the cases, and carried over and made to apply to this question, to which they have no relation and upon which they have no bearing.

On the main question decided in the opinion on motion for rehearing Messrs. McGregor & Gaines have filed such a full, elaborate, able

and exhaustive opinion that I deem it unnecessary for me to further investigate that question or discuss it. I, therefore, content myself with adopting as my dissenting opinion the able brief filed by those gentlemen. It is a complete legal answer to the opinion of the majority. I therefore adopt their brief and argument as my dissenting opinion, which is as follows:

"In this case appellant relies on two propositions. One is that the indictment does not negative the exceptions in the statute; the other is that local option having been adopted in Comanche County before the law making it a felony to engage in the business of selling intoxicating liquor went into effect, this law can not apply to that county. We shall discuss in this brief the first of these propositions.

"Section 1 of the Act of 1909, chapter 15, reads as follows: 'If any person shall engage in or pursue the occupation or business of selling intoxicating liquors, except as permitted by law, in any county, justice precinct, town or subdivision of a county in which the sale of intoxicating liquors has been or shall hereafter be prohibited under the laws of this State, he or she shall be punished by confinement in the penitentiary not less than two nor more than five years.'

"The indictment follows the form copied in the Mizell case, 59 Texas Crim. Rep., 226, 128 S. W. Rep., 125, and after alleging the several orders by which local option was put in force in Comanche County, alleges certain sales 'in violation of said law.' Other than what may be held to be in this phrase, there is no negation in the indictment of whatever exceptions are covered by the words of the statute 'except as permitted by law.'

"The words 'except as permitted by law' are in the enacting clause of the statute, are a part of the definition of the offense, so that one can not be read without the other, and are in their very nature and necessarily words of reference. For this reason appellant contends that the indictment must negative the exceptions permitted by the local option law as contained in article 403 of the Criminal Code and article 5060a of the Revised Statutes.

"The opinion of the majority of the court meets this proposition by holding, apparently, that it is not necessary to negative the exceptions of the statute at all. This position is as new as the arguments advanced in its support are novel in the jurisprudence of this State. It is not extravagant to say, as will appear in the progress of this argument, that not only in the judicial history of this State, but of all countries that speak the English language, it has been held by a clear and unbroken line of authority that where an exception is in the enacting clause of a statute, and is a part of the definition of the offense, so that one can not be read without the other, the indictment must negative the exception. Is this no longer the law? If not, by what authority has the law been changed?

"The opinion of the majority of the court is based upon the fol-

lowing propositions: 1st. That the indictment follows the form copied in the Mizell case and approved in the cases of Murphy, Sutphen and Payne, cited in the opinion. 2d. That article 452 of the Code of Criminal Procedure has dispensed with the necessity of negativing exceptions in prosecutions for the sale of intoxicating liquors. 3. That in any event, to refuse to follow the form in the Mizell case would result in great expense and great inconvenience and confusion to the prosecuting officers of the State. This is a fair analysis of the opinion. If these propositions are not sound, the opinion falls with them. It is our purpose to show not only that these propositions are not sound, but that no proposition in the opinion is supported by any of the authorities cited in support thereof, and that the weight of authority, so far as we are aware, all the authorities are squarely contrary to the several propositions laid down in the opinion of the majority of the court.

"First, as to the indictment following the form copied in the Mizell case. The answer to this is as brief as it is simple. This question was not involved in the Mizell case, and no case in which this question was raised has approved the form copied in the Mizell case as sufficient in this respect. The cases of Payne and Murphy cited in the opinion did not involve this question, and the Sutphen case, which is the only case involving this question since the Mizell case, cites the Mizell case, but it is cited on an entirely different question. Can the Mizell case be authority on an issue not even remotely involved in that case? Is any proposition in our law better established than this: That no case is authority upon an issue not raised or decided in that case?

"Next, on the proposition that article 452 of the Code of Criminal Procedure has dispensed with the necessity of negativing exceptions in all prosecutions for the sale of intoxicating liquors. Article 452 of the present Code of Criminal Procedure is section five of the 'Common Sense' Indictment Act of March 26, 1881. The majority opinion says this Act has never been held unconstitutional. That in practical and legal effect it has been held unconstitutional has been the opinion of the bench and bar of this State for nearly thirty years. Technically speaking, the entire Act has not been held unconstitutional because the entire Act has never been before the court. But all of its provisions that have been before this court have been held unconstitutional, where they relieve the State from the necessity of alleging all the acts and omissions constituting the offense. That this very article 452 has by every principle of legal analogy been held unconstitutional we shall show in two ways:

"First, in the case of Hewitt v. State, 25 Texas, 722, the defendant was prosecuted for selling whisky without a license. The statute under which defendant was prosecuted read as follows:

" 'If any person or firm shall sell or be in anywise concerned in selling spirituous, vinous or other intoxicating liquors in quantities

less than one quart, without first having obtained a license therefor in the manner prescribed by this Act, he, she, or they shall be deemed guilty of a misdemeanor,' etc. The indictment failed to negative the exception involved in the expression *'without first having obtained a license therefor.'* The State sought to avoid the necessity of negativing the exception under the seventh section of the same Act, which read as follows: 'In all prosecutions for any violation of any of the provisions of this Act, it shall be sufficient to allege and prove that the person charged with any such violation did sell, or was concerned in selling spirituous, vinous or intoxicating liquors; and it shall not be necessary to allege or prove the kind of liquor sold, the name of the person to whom the same was sold or that the same was sold without license. This Act shall, in all cases, be liberally and remedially construed.' Judge Roberts, than whom no greater ever sat upon the bench in this State, held this 'liberal and remedial' statute unconstitutional, because it relieved the State from alleging that the whisky was sold *'without having first obtained a license therefor,'* as was provided in the enacting clause and definition of the offense. The analogy between the two cases, and between section 7 of the Act of February 7, 1856, and section 5 of the Act of March 26, 1881, is too apparent for comment. The Hewitt case has been followed and approved in the following cases: Wilburn v. State, 25 Texas, 738; Horan v. State, 25 Texas Sup., 271; Duke v. State, 42 Texas, 455; Rice v. State, 37 Texas Crim. Rep., 36; Williamson v. State, 41 Texas Crim. Rep., 464. Is that decision the law? If not, it should be overruled by this court; it has never been overruled before. If it is the law, it settles this case. It is held up before the court.

"Second. The effect of all the decisions on other sections of the 'Common Sense' Indictment Act is to hold section 5 of that Act unconstitutional as well. Our Constitution, article 1, section 10, of the Bill of Rights provides: 'In all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him. . . . and no person shall be held to answer for a criminal offense unless on indictment of a grand jury;' and again in section 19 of the Bill of Rights it is provided that: 'No person shall be deprived of life, liberty or property except by the due course of the law of the land.' We are aware that the crusaders of our time are wont to regard these provisions as meaningless platitudes, but it may be doubted if so many words ever written by the pen of man have cost humanity so much in blood and treasure, and they still stand as the bulwark of our liberties. What is the meaning of the words 'nature and cause of the accusation against him' and of the word 'indictment' as these terms stood interpreted at the time they were made a part of the organic law of this State?

"In the case of Williams v. State, 12 Texas Crim. App., 395, decided the year following the passage of Act of 1881, in passing on some of its provisions, Judge Willson said: 'It is beyond the power

of the Legislature to dispense with the statement in the indictment of that which is essential to the description of the offense. We think it is clear from these authorities that the meaning of the word 'indictment' in the Bill of Rights requires that it should state the essential acts or omissions which constitute the offense with which the party is accused. It must charge explicitly all that is essential to constitute the offense, and can not be aided by intendment.' In the case of Hewitt v. State, above, Judge Roberts says: 'The definition contained in our Code of Criminal Procedure is that "the indictment is the written statement of a grand jury accusing some person therein named of some act or omission which by law is declared to be an offense." At the adoption of our Constitution, and for a century previously, both in England and America, this is what was understood as constituting an indictment.' To the same effect are Huntsman v. State, 12 Texas Crim. App., 619; Rodriguez v. State, 12 Texas Crim. App., 552; Hodges v. State, 12 Texas Crim. App., 554; Allen v. State, 13 Texas Crim. App., 28; Insall v. State, 14 Texas Crim. App., 145; Caldwell v. State, 28 Texas Crim. App., 566; Horan v. State, 25 Texas Sup., 271, to which might be added others to the same effect almost without limit.

"The majority opinion cites vol. 22, page 286, of the Encyclopedia of Law, as authority for the proposition that the Legislature may pass a law dispensing with the necessity of negativing a statutory exception, but a study of the authorities cited in support of that text shows that they were either under constitutional provisions different from our own or were not in the enacting clause of the statute. Why cite the Encyclopedia of Law? The twelfth volume of our Criminal Reports is a text book to the contrary on that proposition, and the decisions in that and the following five volumes, holding that, notwithstanding the Act of March 26, 1881, the indictment must allege all the acts and omissions constituting the offense, would more than fill a volume of the Encyclopedia of Law, and these are decisions of this court on sections of this very Act, a court that was at the time the only court having exclusive criminal jurisdiction among English speaking peoples, and a court the decisions of which are conceded to be the greatest authority on criminal law in the world.

"We pass over the statement in the opinion of the majority of the court to the effect that whatever deficiencies may have existed in the Act of March 26, 1881, were cured by the fact that this section was reenacted in the codification of 1895, with the observation that the codification did not add any new vitality to Acts carried forward, but simply was a continuation of the original Act 'with all its imperfections on its head.' Hartford Ins. Co. v. Walker, 94 Texas, 473; Fischer v. Simon, 95 Texas, 234. Besides, the Legislature could have no more power in adopting the work of codifiers than it had in the passage of the original Act.

"It is said in the opinion that Judge Winkler, in White v. State,

11 Texas Crim. App., 476, upheld article 452. A careful reading of that case will show the indictment in that case was for selling whisky without a license, and that the indictment negatived the exception, and was objected to on other grounds that would not have been valid even in the absence of article 452. The citing of that article in that opinion was superfluous. In view of the fact that Judge Roberts, in the Hewitt case, had previously held that an indictment under the same statute was defective because it failed to negative the exception, can it be supposed that Judge Winkler, who must have been familiar with the Hewitt case, intended to overrule the doctrine there announced?

"Again, the opinion cites the Williams case, 37 Texas Crim. Rep., 238, in which Judge Hurt held that in prosecutions for violation of the local option law it is not necessary to negative the exceptions. But the reason is made plain by the decision itself and the distinction is apparent. In the local option statutes the exceptions are not a part of the enacting clause nor of the definition of the offense—in this statute it is. This court has held in the Fitch case, 58 Texas Crim. Rep., 366, 127 S. W., 1040, that the statute under which this defendant is prosecuted is a separate and distinct offense. But this very authority, in the Williams case, says: 'Under well settled rules all the elements entering into the offense must be alleged in the indictment. The Legislature can not relieve the State of the necessity of so framing the indictment as to charge the accused with all the acts and intents which constitute offense.' What has been said of the Williams case above applies to the cases of Loveless and Malone cited in the opinion.

"The case of Dwyer v. State, 12 Texas Crim. App., 535, is cited by the majority as sustaining the Act of 1881, but in that opinion also it is apparent that the indictment, which was for murder, was sustained not because of or by virtue of the Act of 1881, but because independent of that Act, and under section 10 of the Bill of Rights the indictment charged all the elements of murder as that offense is defined by our statute. In other words, Judge Hurt holds that the form prescribed in that Act would be good without the Act, and is valid, not because it is so enacted by the Legislature, but because it charges all the elements of the offense. We quote from that opinion: 'While we hold that several of the forms prescribed by that Act are insufficient and invalid *because they do not set forth the acts, facts and omissions which constitute the offense* they are intended to charge, we are of opinion that the form prescribed for murder is not subject to this objection. It is very brief, and yet we think it contains every essential fact and element constituting the crime of murder.'

"In the cases of Keith v. State, 58 Texas Crim. Rep., 418, 126 S. W. Rep., 569, and Sutphen v. State, 59 Texas Crim. Rep., 500, 129 S. W. Rep., 144, this court, in passing upon this very question, has

held that exceptions in the statute under which this defendant is prosecuted must be negatived. These holdings are not adverted to in the opinions of the majority. Are these authorities no longer the law? If not, they should be overruled or distinguished, because they stand as 'precedents for the prosecuting officers of this State.'

"If then, article 452 of the Code of Criminal Procedure is unconstitutional, is the exception embodied in the words 'except as permitted by law,' such a part of the definition of the offense that, under section 10 of the Bill of Rights, it is necessary to negative the exceptions referred to in these words?

"We lay down the broad and unqualified proposition that not only under section 10 of the Bill of Rights it has been the law of this State from the days of the Republic that where an exception is in the enacting clause of a statute and forms a part of the definition of the offense so that one can not be read without the other, it must be negatived in the indictment, but that this has been the well defined and unquestioned rule of law in both England and America as far back as there is any record of judicial decisions. This ought to be long enough to give it the force of authority. In support of this proposition we cite the following authorities: Vosmer v. Omrod, 9 Dowell & Ryland, 599, by Tenterdon, C. J.; Steel v. Smith, 1 Barnwell & Alderson, 94; The case of Spieres, 1 Term Repts., 141; King v. Earnshaw, 15 East., 456; Carle v. Parent, 5 Q. B., 451; Commonwealth v. Hart, 11 Cushing, 130; Chitty, 2 Gen. Prac., 166; State v. O'Donnell, 10 R. I., 472; Bishop Cr. Proc., sec. 539; Keck v. U. S., 172 U. S., 434; Schooner Hoppet v. U. S., 7 Cranch, 389; Cook v. U. S., 17 Wallace, 168; State v. Hamlett (Mo.), 107 S. W. Rep., 1012; Bush v. Republic, 1 Texas, 454; Lewis v. State, 2 Texas Crim. App., 26; Archer v. State, 10 Texas Crim. App., 482; Huntsman v. State, 12 Texas Crim. App., 619; Blaisdell v. State, 5 Texas Crim. App., 263; Colchell v. State, 23 Texas Crim. App., 584; Rice v. State, 37 Texas Crim. Rep., 36; Mosely v. State, 18 Texas Crim. App., 311; Williamson v. State, 55 S. W. Rep., 568; Salter v. State, 73 S. W. Rep., 395; Keith v. State, 58 Texas Crim. Rep., 418, 126 S. W. Rep., 569; Sutphen v. State, 59 Texas Crim. Rep., 500, 129 S. W. Rep., 144.

"The best statement of the rule that has ever been made is by Bayley, J., in the case of Steel v. Smith, 1 Barnwell & Alderson, 94, which the United States Supreme Court says is the leading case on the subject, as follows: 'When there is an exception so incorporated with the enacting clause that the one cannot be read without the other, then the exception must be negatived.' This is quoted with approval by Judge Henderson, in the Rice case, 37 Texas Crim. Rep., 36. Another way of stating the rule is that if the exception is a part of the definition and description of the offense it must be negatived without reference to its location in the Act or statute, and it is plain that under either of these ways of stating the principle the exception in

the statute must be negatived, because it is certainly so incorporated
with the enacting clause 'that one can not be read without the other.'
The very definition of the offense can not be read without reading
the exception, nor can the offense possibly be defined without stating
the exception. Let this be remembered: It is not a crime per se
to sell intoxicating liquors in Texas, nor is the sale of intoxicating
liquors a violation of law in any county in Texas, but only the sale
of such liquors in certain places and with certain exceptions. It
must be in local option territory; it must be without the prescription
of a physician; without the license of a druggist, and not for sac-
ramental purposes; and it is as necessary to allege these and each of
them as it is to allege that it was in local option territory.

"As early as the year 1786, we find this doctrine clearly defined
in the common law. In the case of Spieres, 1 Term Reports, the
defendant was charged with 'impressing mariners,' and the statute
contained the exception, 'unless such persons shall have before de-
serted from such ship of war.' In passing upon this question, Mans-
field, J., 'the greatest judge who ever sat upon the English bench,'
says: 'The first point is whether the exceptions contained in the
enacting clause of a statute which creates an offense and gives a
penalty must be negatived.' The pleader who drew this declaration
was clearly of opinion that it was necessary, for he has negatived
what he thought to be the exception, and he was right, for it is a
settled distinction between a proviso in the description of the offense
and a subsequent exemption from the penalty under certain circum-
stances. In the former the plaintiff must, as in actions upon the game
law, aver a case which brings the defendant within the Act; there-
fore he must negative the exceptions in the enacting clause."

"Again, in the year 1812, in the case of The King v. Earnshaw,
15 East., 456, where the defendant was prosecuted for violation of
the game laws and there were many exceptions in the statute, most
of which the complainant negatived, Lord Ellenborough said: 'It
has been settled that all the qualifications for killing game must
be specifically negatived, and that being so, there is no reason for
dispensing with the terms in which they may be aptly and certainly
negatived. Here one of the qualifications mentioned in the statute
is omitted to be negatived, namely, that the defendant had an estate
of inheritance of the annual value of £100 in right of his wife. We
must presume therefore that it could not have been truly negatived.
It is always safer in these cases to follow the words of the Act." In
the last sentence above, the learned judge evidently means that the
exceptions must be negatived in the language of the exceptions them-
selves, for in the same case, LeBlanc, J., says: "If it had been only
alleged generally that the defendant was *not qualified according to
law,* the conviction would have been clearly bad and we can not dis-
tinguish between a case where none of the exceptions are specifically
negatived and where one of them only is omitted."

"It is believed that all sound authority is uniform in support of the above proposition that it is necessary to negative an exception situated as this exception is, and it is also believed that all sound authority is equally uniform in holding that such words as 'except as permitted by law' are words of reference and that they incorporate into the enacting clause the exceptions to which they refer, and that these exceptions so incorporated must be negatived in the language of the exceptions themselves or in the other language fully as broad.

"The principle is well stated by Metcalf, J., of the Supreme Court of Massachusetts, in the case of Commonwealth v. Hart, 11 Cushing, 130, 'There is a middle class of cases, namely, where the exception is not in express terms introduced into the enacting clause, but only by reference to some subsequent or prior clause or to some other statute, as when the words "except as hereinafter mentioned," or other words referring to matter out of the enacting clause, are used. The rule in these cases is that all circumstances of exemption and modification, whether applying to the offense or to the person, which are incorporated by reference, with the enacting clause, must be distinctly negatived.' " This case is quoted in the Texas cases cited in our brief.

Chitty says (2 Gen. Prac., 166) : "If the exception be in the enacting clause or in a proviso thereof, or even in any other clause that ought to be read as part thereof, although in a distinct section, then it must be negatived."

The case of the State v. O'Donnell, 10 Rhode Island, 472, is a very thorough analysis of this principle, and is frequently cited. In that case, section 1 of the Act forbade the sale of intoxicants, "except as hereinafter provided." Section 14 made it lawful for "town agents and persons who import said liquors in original packages" to sell. The indictment negatived all matters in section 1, but failed to negative the exceptions in section 14, and the court says: "The question is, whether the exception is incorporated into the enacting clause by words of reference? The rule is founded on the general principle that the indictment must contain the statement of those facts which constitute an offense under the statute. The question is whether the exception is so incorporated with and becomes a part of the enactment as to constitute a part of the definition or description of the offense. It is the nature of the exception and not its location which is important."

"Mr. Bishop lays it down as a rule (Crim. Proc., sec. 539) : 'Where there is in the enacting clause a reference to an exception or a proviso more fully stated in a separate clause or statute, the indictment is required to negative it or not, according as the form of the expression and the nature of the matter render the latter an element in the prima facie offense or in the defense.' In other words, if it would be necessary to negative it if it were copied into the enacting clause, it would be equally necessary if it is referred to.

"In the case of Keck v. United States, 172 U. S., 434, the defendant

was prosecuted for the violation of section 3082, of the United States Revised Statutes, which reads as follows: 'If any person shall fraudulently or knowingly import or bring into the United States, or assist in doing so, any merchandise, contrary to law, or shall receive, conceal, buy, sell or in any manner facilitate the transportation, concealment or sale of such merchandise after importation, knowing the same to have been imported contrary to law,' etc., and prescribing the penalty.

"The indictment charged that on the date named, 'the said Keck did knowingly, wilfully and unlawfully import and bring into the United States, to wit, into the port of Philadelphia,' diamonds of a stated value, *'contrary to law* and the provisions of the Act of Congress in such cases made and provided, with the intent to defraud the United States.'

"Now the statute under which this indictment is drawn reads: 'If any person shall engage in or pursue the occupation or business of selling intoxicating liquors *except as permitted by law,'* etc., from which it is clear that the words of the Federal statute, 'contrary to law' have the same meaning and relation to that offense as do the words 'except as permitted by law' in our statute, and that the indictment in that case was in this particular as near like this indictment as one could hope to find, in that, in declaring under statutes similar in principle, the bill in that case uses the words 'contrary to law,' whereas the bill in this case says 'in violation of said law,' but if there is any difference it is in favor of the indictment in the Keck case, because *it pursues the language of the statute.*

"In passing upon this, the court says: 'As is apparent, the alleged offense averred in this count was charged *substantially in the words of the statute.* In the argument at bar, counsel for the United States conceded the vagueness of the accusation thus made and tested by the principles laid down in U. S. v. Carroll, 105 U. S., 611; U. S. v. Hess, 124 U. S., 483, and Evans v. U. S., 153 U. S., 584, the count was clearly insufficient. The allegations of the count were obviously too general and did not sufficiently inform the defendant of the nature of the accusation against him. The words "contrary to law" contained in the statute *clearly relate to legal provisions not found in section 3082* itself, but we look in vain in the count for any indication of what was relied on as violative of the statutory regulations concerning the importation of merchandise. The generic expression, "import and bring into the United States" did not convey the necessary information, because importing merchandise is not per se contrary to law and could only become so when done in violation of specific statutory requirements.' If the use of the words 'contrary to law' is not a sufficient negative when these are the words of the statute, then by a stronger reason they could not be sufficient when they are neither the words of the statute nor their equivalent. The words of the statute, even, are not sufficient, and in support of this

no stronger authority than the above could be desired. Also, the sale of whisky, like the importation of merchandise, is not an offense per se, but only when not permitted by law.

"In the year 1813 Chief Justice Marshall, in the case of the Schooner Hoppet v. United States, 7 Cranch, 389, touches the very heart of the issue: 'It is not controverted that in all proceedings in courts of common law, either against the person or the thing, for penalties or forfeitures, the allegation that the act charged was committed *in violation of law* or of the provisions of a particular statute will not justify condemnation *unless independent of this allegation a case be stated which shows that the law has* been violated. The reference to the statute may direct the attention of the court and of the accused to the particular statute by which the prosecution is to be sustained, but forms no part of the description of the offense. The importance of this principle to a fair administration of justice, to that certainty introduced and demanded by the free genius of our institutions in all prosecutions for offenses against the law, is too apparent to require elucidation, and the principle itself is too familiar not to suggest itself to every gentleman of the profession.'

"In the case of Steel v. Smith, 1 Barnwell & Alderson, 94, which, as it has been observed, the U. S. Supreme Court, in the Cook case, 17 Wallace, says is the leading case upon the subject, the rule is thus laid down: 'Where an Act of Parliament in the enacting clause creates an offense, and gives a penalty, and in the same section there follows a proviso containing an exemption which is not incorporated in the enacting clause by any words of reference, it is not necessary to negative such proviso, *but where there is an exception so incorporated* with the enacting clause the exception must be negatived.' From which it will be seen that words of reference put the exception in the enacting clause as though it were there copied in full.

"The same doctrine is approved and further expounded in the case of the U. S. v. Cook, above cited, where the court, in speaking of words of reference, says, 'The exception itself is supposed to be incorporated in the general clause.'

"In the case of Hamlett v. State (Mo.), 107 S. W., 1012, the defendant was charged with pursuing the occupation of a druggist without being a registered pharmacist. Section 3036 of the Act prohibited the pursuit of the business 'by any person not a registered pharmacist,' and concluded with the words 'except as hereinafter provided.' Section 3045 denounced the offense in another phase 'except as provided in section 3040.' The indictment negatived the exception in section 3036, in the following language: 'Without then and there being a duly registered pharmacist and without having any legal authority to so compound, retail, dispense and sell said medicine and poisons.' The objection was that the indictment failed to negative the exceptions in the other sections alluded to by the language of the section under which the bill was drawn. The court says: 'Plainly

all the elements of the offense intended to be prohibited by said section can not be found in the section itself, for on its face it points to subsequent provisions which must be attended to in order to ascertain what the offense is. . It is the contention of the State that inasmuch as the exception to the offense created by the section is contained in subsequent sections of the statute it was unnecessary to negative said exceptions in the indictment, and authorities are cited in support of this proposition. These decisions and many others say an indictment founded on one section of a statute need not negative an exception or provision contained in a subsequent section, but this rule can not be applied to an instance in which the section declared on in the indictment, instead of containing in itself a full definition of the crime prohibited, *refers to a* subsequent section for further information regarding it and other ingredients in it. In such an instance the subsequent exception or proviso is by reference made a part of the prior enacting clause. In other words, the subsequent clause or section becomes as much a part of the first one as if it had been incorporated *with it in drawing the statute.'* Again, the court says: 'Whether a statutory exception is contained in the enacting clause or in a subsequent section, it must be negatived if it is so interwoven with the clause defining the offense as to constitute a material part thereof and be one of the essential ingredients of the criminal act. Cases have arisen where the exception, though in a subsequent clause or section, was nevertheless so incorporated with the words previously employed in defining the offense as to render it impossible to frame the actual statutory charge in the indictment without alleging the accused was not within the exception contained in the subsequent clause, section or statute. The exception alluded to by section 3040 of the statute as incorporated into section 3036 by words of express reference constitutes an essential element of the offense created. . . . Section 3045 includes words of express reference to the exception in section 3040, and what we have said in regard to negativing the exception in section 3036 is just as applicable to one founded on section 3045.' Now, the words of reference in section 3045 are 'except as provided in section 3040.' Do not the words of our statute, 'except as permitted by law,' if they mean anything, necessarily refer to the exceptions in articles 403 and 5060a?

"If this court holds that the words of the statute, 'except as permitted by law,' and the words of the indictment, 'in violation of said law,' are equivalent to each other, then this holding establishes our proposition, because, in the case of Keck v. U. S., above, and many of the other cases cited, the very words, 'contrary to law,' and 'in violation of law,' when used in the enacting clause, have been held to be 'words of reference,' and to refer to and incorporate the exceptions contained in another clause or section, and make it necessary to negative exceptions in the language of the exceptions or language fully as broad. In other words, if 'except as permitted by law' is

held to be equivalent to 'in violation of said law,' or vice versa, the courts having so uniformly held that the words 'in violation of law' are words of reference, is equivalent to holding that 'except as permitted by law' are words of reference. If, on the contrary, this court holds that the words 'in violation of said law' are not equivalent to 'except as permitted by law,' then the indictment falls, because this court has twice held that this very exception must be negatived. Therefore under either construction, the indictment must fall, and there is no escape from one or the other of these constructions.

"The opinion of the majority of the court contains the following expression: 'The prosecuting officers of this State thought, and had a right to think, that this court had given the question mature consideration before sending it forth with its commendation and approval. They have followed the advice given, in the main, and about all the cases coming to this court are written in this form. The State has been put to the expense of trials; a number of men are serving terms in the penitentiary under it, affirmed by this court; prosecutions are pending in many counties in Texas, and for the court to now change its views in so short a time would cause the citizenship of the State to lose confidence in its opinions, and would lead the legal profession to expressions of ridicule.'

"This is, perhaps, one of the most remarkable reasons ever given by a court for affirming a judgment in a criminal case. We submit it to the judgment of those who shall search for the law after the crusade of the hour has 'gone glimmering through the dream of things that were,' that it means neither more nor less than this: Even if the form copied in the Mizell case is not the law, and has never been the law, on the questions raised, it is better, by affirming the judgment, to make it the law, for the sake of consistency. The effort to be consistent in error leads to endless confusion. As sure as the law is a system of pure reason, this holding of the court will meet the ghost of the past on this and kindred questions at every turn until it leads to confusion worse confounded. But this holding lacks even the virtue of consistency, and is, itself 'the court changing its views in so short a time.' At this hour the ink is scarcely dry on the opinions in the Keith and Sutphen cases, holding that the indictment must negative the exceptions in this very statute, and written by the judges whose places are now occupied by the judges who write the majority opinion. Are we to expect the law to change with the personnel of the court? That no man is now serving a term in the penitentiary in a case where this question was raised is certain, because it has only been raised in the cases above named, and they were both reversed on that very question. But even if men were serving terms, the question was not raised in this court, and this court does not pass upon questions that are not raised. Besides, if the error remains and becomes engrafted upon the system of statutory construction employed by this court, extending to and poisoning the

stream of legal lore as it spreads and sweeps onward, not only men now serving terms under a statute little more than a year old, but the many more in all the years that are to be will be the victims of this same error. The future is a longer time than since July 11, 1909. The greatest lawyer of the Romans said: 'Not this present when I am, but that long time when I will not be moves me more,' and on this text George Eliot wrote her famous poem, 'The Choir Invisible.' But it is said, 'The State has been put to the expense of trials.' Let the mind review the history of what section 10 of the Bill of Rights has cost humanity, and then 'the expense of trials' will not loom so large. All trials are expensive, but they are guaranteed by the Constitution and that they shall be 'by the due course of the law of the land.' But it is also said that for the court to change its views 'in so short a time would lead the legal profession to expressions of ridicule.' It is better to be right and be wrongfully ridiculed than to be wrong and be rightfully ridiculed.

"On the other proposition in the case, namely, that local option having been adopted in Comanche County before the felony statute took effect, that statute can not be operative in that county, we have simply to add that in our opinion the dissenting opinion of Judge Davidson in the Fitch case presents all that can be said on that proposition and that the arguments there presented are not answered, and 'when the shouting and the tumult dies' the dissenting opinion ought to be held and will be the recognized law of the land."